LAW OFFICES
**GIBSON, NAKAMURA & GREEN, P.L.L.C.**
2329 N. TUCSON BLVD.
TUCSON, ARIZONA 85716
(520) 722-2600

Scott D. Gibson, SBN 007395
Kristen M. Green, SBN 019802
ecf@gnglaw.com
Attorneys for Debtor

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re<br><br>DEED AND NOTE TRADERS, L.L.C.,<br><br>Debtor. | In Proceedings Under Chapter 11<br><br>NO. 4-10-bk-03640-EWH |

**DEBTOR'S PLAN OF REORGANIZATION**

**DATED APRIL 2, 2010**

LAW OFFICES
GIBSON, NAKAMURA & GREEN, P.L.L.C.
2329 N. TUCSON BLVD.
TUCSON, ARIZONA 85716
(520) 722-2600

Deed and Note Traders, L.L.C., the Debtor-in-Possession in this Chapter 11 case, hereby submits the following Plan of Reorganization pursuant to 11 U.S.C. § 1121, and requests confirmation of this Plan of Reorganization pursuant to 11 U.S.C. § 1129(a) and (b).

## ARTICLE 1

## DEFINITIONS

**1.1** **"Administrative Claim"** shall mean any costs or expenses of administration of the case allowed under 11 U.S.C. § 503(b), including, without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses of operating the business of the Debtor including, without limitation, loans or other advances to the Debtor, as Debtor-in-Possession, all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under § 330 of the Bankruptcy Code, and any fees or charges assessed against the Debtor's estate under Chapter 123, Title 28, United States Code.

**1.2** **"Allowed Claim"** shall mean every Claim: (a)(i) for which a proof of claim is filed within the time fixed by the Court; or (ii) that has been, or hereafter is listed by the Debtor, liquidated in amount and not disputed or contingent, and, in either event; (b)(i) to which no objection to the allowance thereof has been filed within the period fixed by the Court with respect to the Plan, or (ii) as to which the order allowing such Claim has become final and non-appealable. Unless otherwise specified in this Plan, "Allowed Claim" shall not include any interest on the principal amount of such Claim maturing or accruing from and after the Petition Date.

**1.3** **"Allowed Secured Claim"** shall mean the Allowed Amount of a Claim secured by a lien, security interest, encumbrance, or other charge{s) against any interest of the Debtor in any property of the estate (as defined in 11 U.S.C. § 541), which lien, security interest, encumbrance, or other charge(s) is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Code or other applicable non-bankruptcy law, to the extent of the

value of the interest of the holder of such Allowed Claim in such property as determined in accordance with 11 U.S.C. §§ 506(a) and (b).

  **1.4** **"Allowed Unsecured Claim"** shall mean the Allowed Amount of a Claim that is liquidated, matured, and non-contingent, for which the claimant holds no security for the repayment thereof.

  **1.5** **"Bankruptcy Court"** means the United States District Court for the District of Arizona, having jurisdiction over this case and, to the extent of any reference made to 28 U.S.C. § 157, the unit of such District Court constituted pursuant to 28 U.S.C. § 151.

  **1.6** **"Bankruptcy Code"** shall mean the United States Bankruptcy Code, 11 U.S.C. § 101, et seq.

  **1.7** **"Bankruptcy Rules"** shall mean the Federal Rules of Bankruptcy Procedure, as amended and promulgated under 28 U.S.C. § 2075.

  **1.8** **"Business Day"** shall mean a day of the year on which commercial banks are not required or authorized to close for business in Tucson, Arizona.

  **1.9** **"Capital Expenditures"** shall mean, for any period, the aggregate of all expenditures, during such period, which, in accordance with GAAP, are required to be included in property, plant, equipment, or another fixed-asset account.

  **1.10** **"Capital Receipts"** shall mean (i) the net sales proceeds from the sale of any of the Debtor's tangible assets, or (ii) the funds realized from the refinancing of the indebtedness secured by any of the Debtor's tangible assets; (iii) the proceeds of the condemnation of or taking by power of eminent domain of all or any portion of the Debtor's tangible assets, and/or (iv) the proceeds of any title or fire insurance on any of the Debtor's tangible assets.

  **1.11** **"Claim"** shall mean any right of payment which is evidenced by a proof of claim or application for payment or compensation that was: (i) timely filed; or (ii) deemed filed

LAW OFFICES
**GIBSON, NAKAMURA & GREEN, P.L.L.C.**
2329 N. TUCSON BLVD.
TUCSON, ARIZONA 85716
(520) 722-2600

DNT\PLAN 021710.doc
04/6/10 2:42 PM

3

Case 4:10-bk-03640-BMW Doc 69 Filed 04/06/10 Entered 04/06/10 14:49:33 Desc
Main Document  Page 3 of 17

pursuant to 11 U.S.C. § 1111(a); or (iii) filed late with leave of Court after notice and opportunity for hearing were provided to the Debtor.

**1.12** **"Confirmation"** shall mean the entry of an order of the Bankruptcy Court confirming the Debtor's Plan of Reorganization.

**1.13** **"Debtor"** shall mean Deed and Note Traders, L.L.C., an Arizona limited liability company.

**1.14** **"Effective Date"** shall mean the first (1st) Business Day following the date on which the Final Order of Confirmation is entered.

**1.15** **"Estate Assets"** shall mean the Debtor's interest in all real or personal property, tangible or intangible, as of the Petition Date, including but not limited to accounts, contract rights, furniture, fixtures, equipment, inventory, as well as the goodwill and "going concern value" of the Debtor's operating business.

**1.16** **"Final Order"** shall mean an order of the Bankruptcy Court as to which: (i) the time for appeal has expired; or (ii) any appeal that has been filed has been finally resolved or dismissed. Notwithstanding the foregoing, an order confirming this Plan, and any order approving any disclosure statement relating to this Plan shall be a "Final Order" whether or not an appeal has been filed, so long as no stay of such Order has been issued and remains in effect.

**1.17** **"First Chapter 11 Case"** shall be the proceeding under Chapter 11 of Title 11 U.S.C., commenced by the Debtor on September 7, 2007 before the United State Bankruptcy Court for the District of Arizona.

**1.18** **"First Plan"** shall mean the Second Amended Plan of Reorganization for the Debtor confirmed by the Court in the First Chapter 11 Case by Order dated October 23, 2008.

**1.19** **"GAAP"** shall mean generally accepted accounting principles in the United States of America, as in effect from time to time.

LAW OFFICES
GIBSON, NAKAMURA & GREEN, P.L.L.C.
2329 N. TUCSON BLVD.
TUCSON, ARIZONA 85716
(520) 722-2600

**1.20** **"Gross Receipts"** shall mean, for any period, all cash receipts of the Debtor generated from the operation of the Debtor's business during such period other than (i) Capital Receipts realized in respect of the Debtor's business, (ii) contributions to the capital of the Debtor by any shareholder from and after the Effective Date, and (iii) any loans made by any shareholder of the Debtor to the Debtor after the Petition Date.

**1.21** **"Net Cash Flow"** shall mean, for any period, an amount equal to the Gross Receipts of the Debtor during such period, computed on a cash basis, reduced by all expenditures of the Debtor during such period, which expenditures shall include, without limitation, (a) payment of all Operating Expenses of the Debtor, and (b) Capital Expenditures, if any, by the Debtor, to the extent not paid out of the proceeds of Capital Receipts, or out of the proceeds of contributions to the capital of the Debtor or loans by the Debtor's shareholders or a third party to the Debtor; provided, however, that the aggregate of any such Capital Expenditures paid out of Gross Receipts shall be reasonable and appropriate for operation of the Debtor's business.

**1.22** **"Operating Expenses"** shall mean all expenses of any kind incurred by the Debtor in connection with the operation of its business, including, without limitation, salaries, taxes, and benefits for on-site management personnel, administrative services, advertising and promotional costs and expenses, taxes, insurance, escrow payments, repair and maintenance expenses, and management fees. Legal, accounting, and other costs and expenses of the Debtor incurred in connection with the administration of the Debtor shall constitute Operating Expenses.

**1.23** **"Operating Reserve"** shall mean a reserve deposit account to be established, funded and managed by the Debtor. The Operating Reserve may be used by the Debtor to pay ordinary and necessary Operating Expenses, Capital Expenditures, or, at the discretion of the Reorganized Debtor, to expedite payments to the holders of any class of Claims under the Plan. The Operating Reserve shall be initially funded up to the Operating Reserve

LAW OFFICES
GIBSON, NAKAMURA & GREEN, P.L.L.C.
2329 N. TUCSON BLVD.
TUCSON, ARIZONA 85716
(520) 722-2600

Requirement on the Effective Date, and shall be replenished each month, up to the Operating Reserve Requirement, from Net Cash Flow, if available.

**1.24** **"Operating Reserve Requirement"** shall mean a sum equal to the funds on deposit in the Debtor's operating accounts on the Effective Date, which sum is estimated to be approximately $275,000-$300,000.

**1.25** **"Outstanding Principal"** shall mean, an amount equal to the sum of (1) the fair market value of the real assets of the Debtor as of the Effective date; less (2) the sum of all payments made to the holder of any Allowed Secured Claim from and after the Petition Date to Effective Date. The Outstanding Principal shall not include any interest accruing on the Class 4 Allowed Secured Claims between the Petition Date and the Effective Date nor any penalty or default interest or late charges accruing prior to the Effective Date which may be claimed or provided fro under the Note. The Outstanding Principal shall also not include any attorneys' fees or expenses incurred by the holders Class 4 Claims after the Petition Date through and including the Effective date, except to the extent permitted under Bankruptcy Code sec. 506.

**1.26** **"Petition Date"** shall mean September 7, 2007, the date that the Voluntary Petition for relief was filed by the Debtor commencing this chapter 11 case.

**1.27** **"Plan"** shall mean this Plan of Reorganization filed on behalf of the Debtor and any and all modifications thereof.

**1.28** **"Plan Fund"** shall mean a fund of money to be deposited into an interest-bearing deposit account for the exclusive use by the Debtor to pay Class 6 Claims. The Plan Fund shall be funded initially from all cash on hand as of the Effective Date, less (i) funds required to pay Claims payable as of the Effective Date in accordance with the Plan and (ii) funds necessary to establish the Operating Reserve up to the Operating Reserve Requirement. On or before the 20th day of each month, the Debtor shall deposit all Excess Net Cash Flow (Net Cash

Flow less payments to the Class 3 and 4 claimants and funds necessary to replenish the Operating Reserve to the Operating Reserve Requirement) into the Plan Fund.

## ARTICLE 2

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

The Allowed Claims of the Creditors of the Estate shall be classified as follows:

**2.1** **Class 1 Claims.** The Claims classified as Class 1 Claims shall consist of all Allowed Administrative Claims.

**2.2** **Class 2 Claim.** The Claims classified as Class 2 Claims shall consist of all Unsecured Claims that are entitled to priority under §§ 507(a)(3) through (10) of the Bankruptcy Code to the extent, if any, that said section of the Bankruptcy Code applies in this case.

**2.3** **Class 3 Claims.** The Claims classified as Class 3 Claims shall consist of all Secured Claims that are secured by vehicles or equipments of the Debtor.

**2.4** **Class 4 Claims.** The Claims classified as the Class 4 Claims shall consist of the Real Property Secured Claims not otherwise classified under the Plan.

**2.5** **Class 5 Claims.** The Claims classified as Class 5 Claims shall consist of all Real Property Secured Claims identified on Exhibit "A" attached hereto.

**2.6** **Class 6 Claims**. The Claims classified as the Class 6 Claims shall consist of all general Unsecured Claims

**2.7** **Class 7 Interest.** The Interests classified as the Class 7 Interests shall consist of the equity ownership interests of the members of the Debtor.

GIBSON, NAKAMURA & GREEN, P.L.L.C.
LAW OFFICES
2329 N. TUCSON BLVD.
TUCSON, ARIZONA 85716
(520) 722-2600

# ARTICLE 3

# TREATMENT OF CLASS 1 CLAIMS

# (ADMINISTRATIVE CLAIMS)

Every Class 1 Claim, as and when it is an Allowed Claim, will be treated as follows pursuant to this Plan:

**3.1** Every such Claim shall be paid fully and in cash on the Effective Date, unless arrangements for a later repayment are made with the claimant or ordered by the Court; provided, however, that Administrative Expenses representing (a) liabilities incurred in the ordinary course of business of the Debtor, as Debtor-in-Possession or (b) liabilities arising under loans or advances to the Debtor, as Debtor-in-Possession, whether or not incurred in the ordinary course of business, shall be paid by the Debtor in accordance with the terms and provisions of the particular transactions and any agreements relating thereto.

**3.2** Class 1 Claims are <u>unimpaired</u> pursuant to this Plan.

# ARTICLE 4

# TREATMENT OF CLASS 2 CLAIM

# (PRIORITY UNSECURED CLAIMS)

Every Class 2 Claim as and when it is an Allowed Claim, will be treated as follows pursuant to this Plan:

**4.1** Every such Claim arising under Sections 507(a)(3) through (10) of the Bankruptcy Code, to whatever extent (if any) that such Claim exists, will be paid in full and in cash on the Effective Date, unless arrangements for later payment are made with the creditor or ordered by the Court. Allowed unsecured priority tax claims arising under Section 507(a)(8) of the Bankruptcy Code shall be paid in full in deferred cash payments together with interest thereon at the applicable statutory rate interest per annum, in equal quarterly installments, amortized over a period of five (5) years from the Petition Date.

**4.2** Class 2 Claims are <u>unimpaired</u> pursuant to this Plan.

## ARTICLE 5

## TREATMENT OF CLASS 3 CLAIMS

The Class 3 Claims, as and when it becomes an Allowed Secured Claim, shall be treated as follows under the Plan:

**5.1** The Class 3 Claimants shall retain their lien and security interest in and to the collateral securing said Claim, and all other terms and conditions of the loan and security documents evidencing such Claim will remain unchanged except as modified by this Plan. The Allowed Amount of the Class 3 Allowed Secured Claim shall be paid as follows:

    **a.** **Payment of the Class 3 Claim.** All terms and conditions of the First Plan relating to the claims of the Class 3 creditors will remain unchanged, except that any payments in arrears as of the Effective Date of the Plan shall be added to the end of the payment term of the First Plan and paid until the claim is paid in full, with interest as provided in the First Plan

    **b.** **Default Interest, Late Fees and Other Charges.** The Class 3 Claimant shall not be entitle to any default interest, late fee or other charges assets because of a default that occurred after the Petition Date through and including the Effective Date.

**5.2** Class 3 Claims are <u>impaired</u> pursuant to this Plan.

## ARTICLE 6

## TREATMENT OF CLASS 4 CLAIMS

Every Class 4 Claim, as and when it is an Allowed Claim, will be treated as follows pursuant to this Plan:

**6.1** The Class 4 Claimants shall retain their lien and security interest in and to the real property securing said Claim. The Allowed Amount of the Class 4 Allowed Secured Claim shall be paid as follows:

LAW OFFICES
GIBSON, NAKAMURA & GREEN, P.L.L.C.
2329 N. TUCSON BLVD.
TUCSON, ARIZONA 85716
(520) 722-2600

### a. **Payment of Interest.**

The holder of the Class s 4 Allowed Secured Claims shall receive deferred interest only cash payments based upon the amount of the Outstanding Principal of each such claim, as of the Effective Date calculated at the rate set forth in the first Plan. Commencing on the 1st day of the second calendar month following the Effective Date and on the 1st day of each month thereafter for the remaining term of the payment obligations under the First Plan, interest shall be payable in arrears to the holders of Class 4 Claims.

### b. **Payment of Principal.**

Upon the earliest to occur of (i) the expiration of the Plan Period, (ii) the sale of the collateral for a Class 4 Claim, or (ii) the refinancing of the indebtedness for any Class 4 Claim, or (iii) the original maturity date for each Class 4 Claim set forth in the First Plan, the entire amount of the then Outstanding Principal of the Class 4 Claims and all accrued but unpaid interest thereon shall be due and payable in full; provided, ho due and payable in full.

### c. **Calculation of Interest.**

Interest on the Class 4 Claims shall be paid in arrears and shall be calculated on the basis of a 365-day year.

### d. **Optional Prepayment of the Pacific Mutual Note.**

The Class 4 Claims shall be pre-payable in whole or in part, without premium or penalty, at any time.

**6.2** The Class 4 Claims is <u>impaired</u> pursuant to the Plan.

## ARTICLE 7

## TREATMENT OF CLASS 5 CLAIMS

## (SURRENDER OF COLLATERAL)

Every Class 5 Claim, as and when it is an Allowed Claim, will be treated as follows pursuant to this Plan:

**7.1** The Class 5 claims will be the secured claimants holding liens on the parcels of real property identified in Exhibit "A" attached hereto. The real property securing the claims of the Class 5 Claimants shall be surrendered to the Claimants upon the Effective Date of the Plan by

GIBSON, NAKAMURA & GREEN, P.L.L.C.
LAW OFFICES
2329 N. TUCSON BLVD.
TUCSON, ARIZONA 85716
(520) 722-2600

way of a deed in lieu of foreclosure. All rents from the real property securing the Class 5 Claimants shall remain with the Debtor to cover the costs associated with the Property while in the Possession of the Debtor. Any Class 5 Claimant wishing to take title to the Class 5 Property prior to the Effective Date shall make a request therefore to the Debtor and shall receive a Deed to the collateral; provided however, in exchange for such early surrender, any such Class 5 Claimant must agree to release any claim it may have for a deficiency against the Debtor with respect to the Class 5 Property only. Class 5 Claimants that wait until the Effective Date to receive the title to the collateral shall have the right to a assert an unsecured claim for any deficiency, provided a Proof of Claim supported by an appraisal prepared by a licensed appraiser is filed no later than thirty (30) following the Effective Date. The Debtor shall thereafter have thirty (30) days thereafter to object to such claim, otherwise it shall be deemed allowed and paid as a Class 6 Claim. In the case of more than one holder of a Class 5 Secured Claim against the surrendered property, the property shall be deed to the holder of the junior or subordinate lien against the property. In the event the Debtor holds a rental or earnest money deposit from the current occupant of the premises to be surrendered, such deposit shall be surrendered: (i) to the holder of the Class 5 claim receiving the title to the Property, to the extent such holder assumes the rental or purchase agreement applicable to such property, with such deposit to be turned over at the termination of the tenancy and or the closing of the sale of such property; or (ii) to the occupant of the premises, to the extent the lease or option for the property is rejected by the Debtor. The refund of any Deposit shall not include any amount that was to be credited to a down payment as "rent credits". The Debtor reserves the right to add to or subtract from the properties included in Class 5 at any time prior to confirmation. If excluded from Class 5, the claim will be paid as a Class 4 Claim.

Included in the Class 5 Claims shall be those secured creditors who were classified as Class 5 Creditors in the First Plan, who failed to record the Deeds tendered to them under the Order confirming the First Plan, except that such creditors shall have no right to a deficiency claim under

this Plan ( such claim having been effectively waived under applicable Arizona law). In the event any Class 5 Creditor shall fail to record a Deed tendered pursuant to this Plan within thirty (30) days following the Effective Date, the Debtor shall be authorized to record such Deed without the consent of the holder of the Class 5 Claim, and such recordation shall be binding upon any such Class 5 Claimant.

**7.2** The Class 6 Claims are <u>impaired</u> under the Plan

# ARTICLE 8

# TREATMENT OF CLASS 6 CLAIMS

# (GENERAL UNSECURED CLAIMS)

Every Class 6 Claim, as and when it is an Allowed Claim, will be treated as follows pursuant to this Plan:

**8.1** After payment in full of the Claims in Classes 1 and 2, each and every Class 5 Claim will be paid in full, in cash, in semi-annual installments in a pro rata amount from the Plan Fund, together with interest thereon at the federal judgment rate in effect from time to time. Class 5 Claims shall not include any interest charges, fees, or other costs incurred or assessed after the Petition Date through and including the Effective Date.

**8.2** The Class 5 Claims are <u>impaired</u> pursuant to this Plan.

# ARTICLE 9

# TREATMENT OF CLASS 7 INTERESTS

# (INTEREST HOLDERS)

Every Class 7 Interest, as and when it is an Allowed Interest, will be treated as follows pursuant to this Plan:

**9.1** The member shall retain their interests in the Company, but shall receive nothing of value on account of the interest until all allowed Claims in Classes 1, 2 and 6 have been paid in full.

GIBSON, NAKAMURA & GREEN, P.L.L.C.
LAW OFFICES
2329 N. TUCSON BLVD.
TUCSON, ARIZONA 85716
(520) 722-2600

**9.2** The Class 7 Interests are <u>impaired</u> pursuant to this Plan.

## ARTICLE 10

## IMPLEMENTATION OF THE PLAN

Upon Confirmation of the Plan, all of the assets of the Debtor's estate shall be vested in the Debtor and the Debtor shall continue to control, manage, and operate its business. Debtor shall use the proceeds from the operation of the business to pay the normal operating expenses necessary for the continued, uninterrupted operation of the business. Debtor shall pay all expenses of the business, including taxes and insurance costs, on a current basis. Responsibility for the day-to-day management of the Debtor is vested in the Debtor.

## ARTICLE 11

## EXECUTORY CONTRACTS

Unless rejected prior to the Confirmation Date, or under the Plan, the Debtor hereby expressly assumes all executory contracts to which the Debtor is a party, including, without limitation, any unexpired leases.

## ARTICLE 12

## AMENDMENTS

Debtor may propose amendments to or modifications of the Plan at any time prior to Confirmation of the Plan with the leave of the Bankruptcy Court or as permitted by the Bankruptcy Code or Bankruptcy Rules. After Confirmation of the Plan, the Debtor may amend or modify the Plan, with the approval of the Bankruptcy Court, so long as it does not materially or adversely affect the interests of creditors or other parties in interest as set forth herein, to remedy any defect or omission or to reconcile any inconsistencies in this Plan or in the Order of Confirmation, in such a manner as may be necessary to carry out the purposes and intent of the Plan.

LAW OFFICES
GIBSON, NAKAMURA & GREEN, P.L.L.C.
2329 N. TUCSON BLVD.
TUCSON, ARIZONA 85716
(520) 722-2600

DNT\PLAN 021710.doc
04/6/10 2:42 PM

LAW OFFICES
GIBSON, NAKAMURA & GREEN, P.L.L.C.
2329 N. TUCSON BLVD.
TUCSON, ARIZONA 85716
(520) 722-2600

## ARTICLE 13

## EVENTS OF DEFAULT

The Debtor's failure or refusal to make or perform, when due, all or any part of the payments or obligations required to be made or performed by the Debtor pursuant to this Plan, within ten (10) days after the date such payment or performance is due, shall constitute an Event of Default under this Plan. Upon the occurrence of an Event of Default and Debtor's failure to cure same within ten (10) days from the date of receipt of a written notice specifying the nature of said Event of Default and the specific action required to cure same, any party affected by such Event of Default shall be free to pursue any and all of its rights and remedies against the Debtor as the same may be modified by this Plan. Written notice of an Event of Default shall be sent to the Debtor by United States certified mail, return receipt requested, first class postage prepaid, to the following address:

> Deed and Note Traders, L.L.C.
> 1310 N Alvernon Way
> TUCSON, ARIZONA 85712

with a copy by certified mail to:

> Gibson, Nakamura & Green, P.L.L.C.
> 2329 N. Tucson Blvd
> Tucson, Arizona 85716
> Attn: Kristen Green
>     Scott D. Gibson

## ARTICLE 14

## UNITED STATES TRUSTEE'S FEES

The quarterly fees required by 28 U.S.C. § 1930(a)(6) will be paid to, and reports will be filed with, the U. S. Trustee's Office until application is made for entry of a final decree. Application for a final decree can be made when the Plan has been fully administered, which for

DNT\PLAN 021710.doc
04/6/10 2:42 PM

purposes of this Plan shall mean when the Plan has been substantially consummated, as that term is defined in § 1101(2) of the Bankruptcy Code.

## **ARTICLE 15**

## **RETAINED JURISDICTION OF THE BANKRUPTCY COURT**

Until this case under chapter 11 of the Bankruptcy Code is closed as set forth above, the Bankruptcy Court shall retain full jurisdiction, as provided in 28 U.S.C. § 1471, to carry out the provisions, purposes and intent of this Plan or any modification hereto, including, without limitation:

**a.** Retention of jurisdiction over this reorganization case subject to the provisions of the Plan;

**b.** Classification of the Claim of any creditor and re-examination of Claims that have been allowed for purposes of voting;

**c.** Settlement or adjustment of any Claim or interest and determination of the extent and validity of the disputed, unliquidated, or contingent Claims as may be required, as well as determination of such objections to creditors' Claims as may be filed. The failure of Debtor to object to or examine any Claim for the purpose of voting shall not be deemed to be a waiver of the Debtor's right to object to or re-examine the Claim in whole or in part at any time.

**d.** Liquidation or estimation of damages or determination of the manner and time for such liquidation or estimation in connection with any contingent or unliquidated Claim.

**e.** Determination of all questions and disputes regarding title of the Estate Assets, and determination of all causes of action, controversies, disputes, or conflicts, whether or not subject to action pending as of the date of confirmation, between the Debtor and any party, including, but not limited to, any right of Debtor to recover assets or offset Claims pursuant to the provisions of Title 11 of the Code;

**f.** Adjudication of all Claims or controversies arising out of purchases, sales, or contracts made or undertaken by Debtor during the pendency of the Chapter 11 case;

LAW OFFICES
GIBSON, NAKAMURA & GREEN, P.L.L.C.
2329 N. TUCSON BLVD.
TUCSON, ARIZONA 85716
(520) 722-2600

**g.** Allowance or disallowance of all Claims affected by this Plan;

**h.** Adjudication of any litigation commenced by Debtor to set aside or avoid any transfers pursuant to §§ 544, 545, 547, 548, 549, and/or 553 of the Code;

**i.** The correction of any defect or the curing of any omission, or the reconciliation of any inconsistency in the Plan or the Order of Confirmation as may be necessary to carry out the purposes and intent of this Plan;

**j.** Determination of the extent and validity of any Claim pursuant to § 506 of the Code;

**k.** The modification of this Plan after Confirmation pursuant to the Bankruptcy Rules and the Bankruptcy Code and the authorities given by the acceptance of this Plan;

**l.** Enforcement and interpretation of the terms and conditions of this Plan;

**m.** Entry of any order, including any injunction, necessary to enforce the title, rights, and powers of the Debtor and of the creditors under this Plan and to impose such limitations, restrictions, terms, and conditions of such titles, rights, and powers as the Bankruptcy Court may deem necessary;

**n.** Entry of any order concluding or terminating this case;

**o.** Reviewing any and all disbursements made through the Plan either by or on behalf of the Debtor.

DATED this 6th day of April, 2010.

                      GIBSON, NAKAMURA & GREEN, P.L.L.C.

By: /s/ Scott D. Gibson (007395)
    Scott D. Gibson
    Kristen M. Green
    Attorneys for Debtor

LAW OFFICES
GIBSON, NAKAMURA & GREEN, P.L.L.C.
2329 N. TUCSON BLVD.
TUCSON, ARIZONA 85716
(520) 722-2600

Copy of the foregoing
mailed this 6th day
of April, 2010, to:

| | |
|---|---|
| Elizabeth C. Amorosi<br>United States Trustee<br>230 N. First Ave., Suite 204<br>Phoenix, AZ 85003 | Nancy J. March<br>DECONCINI MCDONALD YETWIN & LACY, P.C.<br>2525 E. Broadway Blvd., #200<br>Tucson, AZ 85716<br>Attorneys for RMKM Family Ltd Partnership |
| Howard A. Chorost<br>21 E. Speedway Boulevard<br>Tucson, AZ 85705<br>Attorney for Vantage West Credit Union | American Home Mortgage Services, Inc.<br>1525 S. Beltline Road, Suite 100 N<br>Coppell, TX 75019<br>Creditor |
| Clifford B. Altfeld<br>ALTFELD, BATTAILE & GOLDMAN, P.C.<br>250 N. Meyer Ave.<br>Tucson, AZ 87501<br>Attorneys for Canyon Community Bank | Dennis J. Clancy<br>RAVEN, CLANCY, & McDONAGH, P.C.<br>313 South Convent<br>Tucson, AZ 85701<br>Attorneys for CNH Capital America LLC |
| Troy E. Larkin<br>PIMA COUNTY ATTORNEY<br>Civil Division<br>32 N. Stone Ave., Suite 2100<br>Tucson, AZ 85701 | Maria Tsagaris<br>MCCALLA RAYMER, LLC<br>1544 Old Alabama Road<br>Roswell, GA 30076-2102<br>Attorneys for Litton Loan Servicing, L.P. |
| Clyde Gavin<br>7240 S. Camino Mirlo<br>Tucson, AZ 85747<br>Creditor | Dennis A. Rosen<br>LAW OFFICES OF DENNIS A. ROSEN<br>1670 E. River Road, Suite 124<br>Tucson, AZ 85718<br>Attorneys for Creditors John Munic Enterprises, Creditors Rosen, and Creditor Kennedy |
| Hilary B. Bonial<br>F# 7745-N-3145<br>9441 LBJ Freeway, Suite 350<br>Dallas, TX 75243<br>Attorney for Specialized Loan Servicing, LLC<br>   And American Home Mortgage Servicing, Inc. | Gerard O'Meara<br>GUST ROSENFELD, PLC<br>1 S. Church Ave., Suite 1900<br>Tucson, AZ 85701-1620<br>Attorneys for Alaska Seaboard Partners, L.P. |
| Specialized Loan Servicing, LLC<br>8742 Lucent Blvd., Suite 300<br>Highlands Ranch, CO 80129<br>Creditor | |

By: /s/ Linda Caputo

DNT\PLAN 021710.doc
04/6/10 2:42 PM