Eileen W. Hollowell, Bankruptcy Judge
_____

1  Brian A. Paino (SBN 027091)
   bpaino@piteduncan.com
2  Philip J. Giles (SBN 030340)
   pgiles@piteduncan.com
3  **PITE DUNCAN, LLP**
   4375 Jutland Drive, Suite 200
4  P.O. Box 17933
   San Diego, CA 92177-0933
5  Telephone: (858) 750-7600
   Facsimile: (619) 590-1385

6

7  Attorneys for *Creditors*
   Wells Fargo Bank, N.A., Green Tree Servicing LLC, and Ocwen Loan Servicing, LLC

8                  **UNITED STATES BANKRUPTCY COURT**

9                    **DISTRICT OF ARIZONA (TUCSON)**

10 | In re | Case No. 4:10-bk-03640-EWH |

11 | DEED AND NOTE TRADER, L.L.C., | Chapter 11 |

12 | Debtor. | **ORDER GRANTING MOTION TO COMPEL DEBTOR'S COMPLIANCE WITH INTERIM ORDER RE: ORDER TO SHOW CAUSE REGARDING CREDITORS' FAILURE TO COMPLY WITH DEBTOR'S PLAN, OR IN THE ALTERNATIVE, TO APPROVE PROPOSED STIPULATION** |

**HEARING:**
Date:     March 6, 2014
Time:     3:00 p.m.
Ctrm:     329

20    On March 6, 2014, the hearing on Wells Fargo Bank, N.A. ("Wells Fargo"), Green Tree

21 Servicing, LLC ("Green Tree"), and Ocwen Loan Servicing, LLC's[1] ("Ocwen") (collectively,

22 the "Creditors") Motion to Compel Debtor's Compliance with Interim Order Re: Order to Show

23 Cause Regarding Creditors' Failure to Comply with Debtor's Plan, or in the Alternative, to

24 approve Proposed Stipulation ("Motion") was held in the courtroom of the Honorable Eileen W.

25 Hollowell at the United States Bankruptcy Court, District of Arizona, Tucson Division, located

26 at 38 S. Scott Avenue, Tucson, AZ 85701.

27 /././

28
_____
[1] Ocwen submitted Joinders to the Motion (*See* docket numbers 1533 & 1537)

1    Appearances as noted on the record.

2    Based on the arguments of counsel, the record before the court, and good cause appearing

3    therefor,

4    **IT IS HEREBY ORDERED:**

5        1.  The Stipulations submitted with the Motion and attached hereto as **Exhibit A** are

6            hereby approved.

7        2.  The Court's Order to Show Cause Regarding Creditors' Failure to Comply with

8            Debtor's Plan entered on March 12, 2013, is hereby discharged as it pertains to

9            Creditors.

10                              **DATED AND SIGNED ABOVE**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Brian A. Paino (SBN 027091)
bpaino@piteduncan.com
Josephine E. Salmon (SBN 020630)
jsalmon@piteduncan.com
**PITE DUNCAN, LLP**
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
Telephone: (858) 750-7600
Facsimile: (619) 590-1385

Attorneys for Wells Fargo Bank, N.A. and Green
Tree Servicing LLC

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re | Case No. 4:10-bk-03640-EWH |
| DEED AND NOTE TRADERS, L.L.C., | Chapter 11 |
| Debtor. | **STIPULATON RE: ORDER TO SHOW CAUSE REGARDING CREDITORS' FAILURE TO COMPLY WITH DEBTOR'S PLAN AND CLARIFYING THE TREATMENT OF CREDITORS' CLAIMS IN DEBTOR'S CHAPTER 11 PLAN** |

This Stipulation Re: Order to Show Cause Regarding Creditors' Failure to Comply with the Debtor's Plan and Clarifying the Treatment of Creditors' Claims in Debtor's Chapter 11 Plan ("Stipulation") is entered into by and between Wells Fargo Bank, N.A. ("Wells Fargo"), Green Tree Servicing, LLC ("Green Tree"), by and through their attorneys of record, Pite Duncan, LLP, and Debtor, Deed and Note Trader, L.L.C. ("Debtor"), by and through its attorneys of record, Law Office of Scott D. Gibson, PLLC (collectively, the "Parties").

The real properties which are the subject of this Stipulation are commonly known as 355 S Craycroft Road, Tucson, AZ 85711 (the "Craycroft Road Property"), 3125 E 28th St, Tucson, AZ 85713 (the "28th St. Property"), and 4009 E. Hayhurst Lane, Tucson, AZ 85712 (the "Hayhurst Property") (collectively, the "Properties").

- 1 -

**STIPULATION RE: ORDER TO SHOW CAUSE REGARDING CREDITORS' FAILURE TO COMPLY WITH DEBTOR'S PLAN AND CLARIFYING THE TREATMENT OF WELLS FARGO'S CLAIMS IN DEBTOR'S CHAPTER 11 PLAN**

Case 4:10-bk-03640-BMW    Doc 1541    Filed 03/19/14    Entered 03/19/14 17:31:45    Desc
Main Document    Page 3 of 24

# RECITALS

**A. SUBJECT PROPERTY**

Creditors have secured claims against Debtor's bankruptcy estate secured by the Properties. Creditors' claims shall be hereafter referred to as the "Subject Loans".

**B. FIRST CHAPTER 11 BANKRUPTCY CASE**

On December 7, 2007, Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the District of Arizona (the "First Case"), which was assigned case number 4:07-bk-01734-EWH.

On December 26, 2007, Debtor filed a Disclosure Statement and Plan of Reorganization Dated December 7, 2007.

Subsequently, on April 24, 2008, Debtor filed a First Amended Chapter 11 Plan of Reorganization. Finally, on May 22, 2008, Debtor filed a Second Amended Chapter 11 Plan of Reorganization (the "First Plan").

Debtor's First Plan appears to classify the Subject Loans as "Class 4 Claims" and provided for the following treatment of those respective claims:

**6.1** The Class 4 Claimants shall retain their lien and security interest in and to the real property securing said Claim, and all other terms and conditions of the loan and security documents evidencing such Claim will remain unchanged except as modified by this Plan. The Allowed Amount of the Class 4 Allowed Secured Claim shall be paid as follows:

**a. Arrearages.** All accrued and unpaid interest (calculated at the contract rate and not at any default rate) which has accrued (but not yet payable) or is presently due under the loan documents evidencing the Class 4 Claims shall be added to the principal balance owing thereon as of the Effective Date (unless the parties have stipulated to an earlier date). (The sum of such arrearages and the unpaid principal balance as of the Petition Date are hereinafter referred to as the "Outstanding Principal".) The holders of the Class 4 Allowed Secured Claim shall receive deferred interest only payments on the Outstanding Principal together with interest at the rate established by Bankrate.com for thirty year residential mortgages in Tucson, AZ, from and after the Effective Date. If any holder of a Class 4 Claim provides credible evidence that value for the collateral establishes a loan to value ratio of more than 80%, the interest rate applicable to such loan shall be increased by 0.75%. The Debtor reserves the right to object to the value asserted by any Class 4 Claimant, in which case, the Court shall determine the value for each such parcel of real estate.

**b. Payment of the Class 4 Claim.** Upon the earliest to occur of (i) the Maturity Date (as defined below), (ii) a Sale of the property securing said Claim, other than a sale where the Debtor provides all or any portion of the financing for the sale, or (iii) the refinancing of the secured indebtedness against said property, the entire amount of the Class 4 Claims and all accrued-but-unpaid interest thereon (as provided in paragraph 6.1(a), above) shall be due and payable in full; provided, however, that absent a Sale or refinancing of the indebtedness secured by said Property, commencing on the earlier of (i) fifteen (15th) day of the second (2nd) calendar month following the Effective Date, or 45 days after the Effective Date , interest on the Class 4 Claims shall be paid monthly, with the entire amount of the Outstanding Principal and all accrued but- unpaid interest due and payable

as to those Class 4 Claims that are secured by a first position lien (other than real estate taxes) on or before the seventh anniversary of the Effective date and as to those Class 4 Claim that are secured by a 2d or 3d lien position, on or before the fifth anniversary of the Effective Date (the "Maturity Date").

On October 23, 2008, the Court entered an Order Confirming Debtor's Plan of Reorganization Dated December 7, 2007 as Amended ("First Confirmation Order").

On February 8, 2010, the Court entered a Final Decree and Order Closing Case in the First Case.

**C.    CURRENT CHAPTER 11 BANKRUPTCY CASE**

On February 12, 2010, Debtor commenced this case by filing a second voluntary petition under Chapter 11 of the Bankruptcy Code (the "Second Case").

On April 6, 2010, the Debtor filed its Disclosure Statement for Debtor's Plan of Reorganization Dated April 2, 2010.

On April 6, 2010, Debtor filed its Plan of Reorganization Dated April 2, 2010 (the "Second Plan"). Like Debtor's First Plan, Debtor's Second Plan appeared to classify the Subject Loans as "Class 4 Claims." The Second Plan provides for the following treatment of Class 4 Claims:

**6.1**    The Class 4 Claimants shall retain their lien and security interest in and to the real property securing said Claim. The Allowed Amount of the Class 4 Allowed Secured Claim shall be paid as follows:

**a. Payment of Interest.**
The holder of the Class 4 Allowed Secured Claims shall receive deferred interest only cash payments based upon the amount of the Outstanding Principal of each such claim, as of the Effective Date calculated at the rate set forth in the first Plan. Commencing on the 1st day of the second calendar month following the Effective Date and on the 1st day of each month thereafter for the remaining term

**STIPULATION RE: ORDER TO SHOW CAUSE REGARDING CREDITORS' FAILURE TO COMPLY WITH DEBTOR'S PLAN AND CLARIFYING THE TREATMENT OF WELLS FARGO'S CLAIMS IN DEBTOR'S CHAPTER 11 PLAN**

of the payment obligations under the First Plan, interest shall be payable in arrears to the holders of Class 4 Claims.

**b. Payment of Principal.**

Upon the earliest to occur of (i) the expiration of the Plan Period, (ii) the sale of the collateral for a Class 4 Claim , or (ii) the refinancing of the indebtedness for any Class 4 Claim, or (iii) the original maturity date for each Class 4 Claim set forth in the First Plan, the entire amount of the then Outstanding Principal of the Class 4 Claims and all accrued but unpaid interest thereon shall be due and payable in full; provided, ho [*sic*] due and payable in full.

The Second Plan defines "Outstanding Principal" as:

**1.25 "Outstanding Principal"** shall mean an amount equal to the sum of (1) the fair market value of the real assets of the Debtors as of the Effective date; <u>less</u> (2) the sum of all payments made to the holder of any Allowed Secured Claim from and after the Petition Date to Effective Date. The Outstanding Principal shall not include any interest accruing on the Class 4 Allowed Secured Claims between the Petition Date and the Effective Date nor any penalty or default interest or late charges accruing prior to the Effective Date which may be claimed or provided for under the Note. The Outstanding Principal shall also not include any attorneys'

fees or expenses incurred by the holders Class 4 Claims after the Petition Date through and including the Effective date, except to the extent permitted under Bankruptcy Code sec. 506."

On June 9, 2010, the Debtor filed its First Amended Disclosure Statement for Debtor's Plan of Reorganization Dated April 2, 2010 (the "<u>Second Disclosure Statement</u>"). Attached to the Second Disclosure Statement as Exhibit 5 is a schedule of all the properties and lenders with alleged secured claims against the Debtor's bankruptcy estate, the balances of the liens against each property, and the estimated current market value of each property.

On February 10, 2011, the Court issued an Order Confirming Debtor's Plan of Reorganization Dated April 2, 2010 as Modified by First Modification of Plan Dated December 22, 2010 (the "<u>Second Confirmation Order</u>").

On March 6, 2013, the Debtor filed the Motion for Order to Show Cause Directing Secured Creditors to Comply with Terms of Plan (the "<u>OSC Motion</u>") indicating the lenders continued to refuse to abide by the terms of the Second Plan and alleged the Debtor sent the lenders multiple copies of the Compliance Order seeking compliance with the Second Plan. The OSC Motion contained no specific allegations against Creditors.

**STIPULATION RE: ORDER TO SHOW CAUSE REGARDING CREDITORS' FAILURE TO COMPLY WITH DEBTOR'S PLAN AND CLARIFYING THE TREATMENT OF WELLS FARGO'S CLAIMS IN DEBTOR'S CHAPTER 11 PLAN**

On March 12, 2013, the Court issued the Order to Show Cause Regarding Creditor's Failure to Comply with Debtor's Plan ("OSC") requiring certain secured creditors of the Debtor to appear and show cause why they should not be held in contempt for failing to comply with the terms of the Second Plan. Attached to the OSC as Exhibit "A" was a list of loans and the corresponding creditors alleged to have violated the Second Plan, which includes the Subject Loans.

On April 11, 2013, the Court held a hearing on the OSC where it instructed all creditors who responded to the OSC to enter into stipulations with the Debtor clarifying the treatment of their respective claims in the Second Plan.

On July 1, 2013, the Court entered the Interim Order Re: Order to Show Cause Regarding Creditors' Failure to Comply with Debtor's Plan (the "Interim Order"), which required the creditors subject to the OSC and the Debtor to negotiate, in good faith, stipulations clarifying the treatment for all claims that were the subject of the OSC.

This Stipulation is being submitted in accordance with the court's April 11, 2013 ruling and the Interim Order and is intended only to address Creditors' Secured Claims. This Stipulation shall not address Creditors' Unsecured Claim.

## THE PARTIES STIPULATE AS FOLLOWS:

1. Creditors shall have secured claims in the following amounts under Debtor's Second Plan (collectively, the "Secured Claims"):

| Secured Creditor | Property Address | Secured Claim Amount[1] |
| --- | --- | --- |
| Wells Fargo Bank, N.A. | Craycroft Road Property | $145,000.00 |
| Wells Fargo Bank, N.A. | 28th St. Property | $73,211.00 |
| Green Tree Servicing, LLC | Hayhurst Property | $77,500.00 |

---

[1] These Secured Claim amounts were derived from numerous discussions and correspondences with Debtor's counsel. Accordingly, Creditors not anticipate Debtor will have any objection to these amounts.

- 5 -

**STIPULATION RE: ORDER TO SHOW CAUSE REGARDING CREDITORS' FAILURE TO COMPLY WITH DEBTOR'S PLAN AND CLARIFYING THE TREATMENT OF WELLS FARGO'S CLAIMS IN DEBTOR'S CHAPTER 11 PLAN**

2.     Debtor shall tender interest-only payments at an interest rate of 5.6%[2] per annum on Creditors' Secured Claims commencing April 1, 2011, and continuing on the first day of each month thereafter until November 1, 2015, when all outstanding amounts owing under Creditors' Secured Claim shall be completely due and payable, via a balloon payment. The interest-only payments shall be in the following amounts:

| Secured Creditor | Property Address | Interest-Only Payment |
|---|---|---|
| Wells Fargo Bank, N.A. | Craycroft Road Property | $676.67 |
| Wells Fargo Bank, N.A. | 28th St. Property | $341.66 |
| Green Tree Servicing, LLC | Hayhurst Property | $361.67 |

The balloon payments shall be in the amount of the Secured Claims, plus any outstanding interest, fees, costs, and/or other expenses recoverable under the Second Plan, this Stipulation, and/or the applicable promissory notes and deeds of trust.

3.     The escrow status of the Subject Loans shall be unmodified by the Second Plan and this Stipulation. In other words, in the event Subject Loans were escrowed for taxes and insurance pre-petition, they shall remain escrowed. Alternatively, if the Subject Loans were non-escrowed pre-petition, they shall remain non-escrowed. However, if Debtor failed to maintain real property taxes and hazard insurance post-petition on the Properties, Creditors retain the right to advance funds for real property taxes and hazard insurance on the Properties and establish escrow accounts as permitted under the applicable promissory notes and deeds of trust.

4.     In the event the Debtor defaults under the terms of this Stipulation and Second Plan, Creditors shall be permitted to exercise their rights under the applicable promissory notes and deeds of trust, and applicable state law. In the event the automatic stay of 11 U.S.C. § 362 is in effect during the Debtor's default, Creditors shall first be required to obtain relief from the

---

[2] This interest rate is derived from numerous discussions and correspondences with Debtor's counsel. Accordingly, Creditors do not anticipate Debtor will have any objection to this interest rate and the related interest-only payment.

**STIPULATION RE: ORDER TO SHOW CAUSE REGARDING CREDITORS' FAILURE TO COMPLY WITH DEBTOR'S PLAN AND CLARIFYING THE TREATMENT OF WELLS FARGO'S CLAIMS IN DEBTOR'S CHAPTER 11 PLAN**

automatic stay prior to exercising its rights under the note, deeds of trust, and applicable state law.

5.    All payments made by Debtor after April 1, 2011 towards the Secured Claims shall be credited to those claims in accordance with this Stipulation and the Second Plan.

6.    Except as otherwise expressly provided herein, all remaining terms of the applicable promissory notes and deeds of trust shall govern the treatment of Creditors' Secured Claims.

**PITE DUNCAN, LLP**

Dated: _____         /s/ _____
                               Josephine E. Salmon
                               Attorneys for Wells Fargo Bank, N.A. and Green
                               Tree Servicing, LLC

**LAW OFFICE OF SCOTT D. GIBSON, PLLC**

Dated: _____         /s/ _____
                               Scott D. Gibson
                               Attorney for Deed and Note Traders, L.L.C.

Brian A. Paino (SBN 027091)
bpaino@piteduncan.com
Josephine E. Salmon (SBN 020630)
jsalmon@piteduncan.com
**PITE DUNCAN, LLP**
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
Telephone: (858) 750-7600
Facsimile: (619) 590-1385

Attorneys for Ocwen Loan Servicing, LLC

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| In re | Case No. 4:10-bk-03640-EWH |
| DEED AND NOTE TRADERS, L.L.C., | Chapter 11 |
| Debtor. | **STIPULATON RE: ORDER TO SHOW CAUSE REGARDING CREDITORS' FAILURE TO COMPLY WITH DEBTOR'S PLAN AND CLARIFYING THE TREATMENT OF CREDITORS' CLAIMS IN DEBTOR'S CHAPTER 11 PLAN** |
| | **HEARING:**<br>Date: March 6, 2014<br>Time: 3:00 p.m.<br>Ctrm: 329 |

This Stipulation Re: Order to Show Cause Regarding Creditors' Failure to Comply with the Debtor's Plan and Clarifying the Treatment of Creditors' Claims in Debtor's Chapter 11 Plan ("Stipulation") is entered into by and between Ocwen Loan Servicing, LLC ("Ocwen"), by and through their attorneys of record, Pite Duncan, LLP, and Debtor, Deed and Note Trader, L.L.C. ("Debtor"), by and through its attorneys of record, Law Office of Scott D. Gibson, PLLC (collectively, the "Parties").

The real property which is the subject of this Stipulation is commonly known as 1587 W. San Ricardo, Tucson, AZ 85713 (the "Property").

- 1 -

**STIPULATION RE: ORDER TO SHOW CAUSE REGARDING CREDITORS' FAILURE TO COMPLY WITH DEBTOR'S PLAN AND CLARIFYING THE TREATMENT OF WELLS FARGO'S CLAIMS IN DEBTOR'S CHAPTER 11 PLAN**

Exhibit A Page 4

# RECITALS

## A.   SUBJECT PROPERTY

Ocwen has a secured claim against Debtor's bankruptcy estate secured by the Property Ocwen's claim shall be hereafter referred to as the "Subject Loan".

## B.   FIRST CHAPTER 11 BANKRUPTCY CASE

On December 7, 2007, Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the District of Arizona (the "First Case"), which was assigned case number 4:07-bk-01734-EWH.

On December 26, 2007, Debtor filed a Disclosure Statement and Plan of Reorganization Dated December 7, 2007.

Subsequently, on April 24, 2008, Debtor filed a First Amended Chapter 11 Plan of Reorganization. Finally, on May 22, 2008, Debtor filed a Second Amended Chapter 11 Plan of Reorganization (the "First Plan").

Debtor's First Plan appears to classify the Subject Loan as a "Class 4 Claims" and provided for the following treatment of those respective claims:

**6.1**   The Class 4 Claimants shall retain their lien and security interest in and to the real property securing said Claim, and all other terms and conditions of the loan and security documents evidencing such Claim will remain unchanged except as modified by this Plan. The Allowed Amount of the Class 4 Allowed Secured Claim shall be paid as follows:

**a. Arrearages.** All accrued and unpaid interest (calculated at the contract rate and not at any default rate) which has accrued (but not yet payable) or is presently due under the loan documents evidencing the Class 4 Claims shall be added to the principal balance owing thereon as of the Effective Date (unless the parties have stipulated to an earlier date). (The sum of such arrearages and the unpaid principal balance as of the Petition Date are hereinafter referred to as the "Outstanding Principal".) The holders of the Class 4 Allowed Secured Claim shall receive deferred interest only payments on the Outstanding Principal together with interest at the rate established by Bankrate.com for thirty year residential mortgages in Tucson, AZ, from and after the Effective Date. If any holder of a Class 4 Claim provides credible evidence that value for the collateral establishes a loan to value ratio of more than 80%, the interest rate applicable to such loan shall be increased by 0.75%. The Debtor reserves the right to object to the value asserted by any Class 4 Claimant, in which case, the Court shall determine the value for each such parcel of real estate.

- 2 -

STIPULATION RE: ORDER TO SHOW CAUSE REGARDING CREDITORS' FAILURE TO COMPLY WITH DEBTOR'S PLAN AND CLARIFYING THE TREATMENT OF WELLS FARGO'S CLAIMS IN DEBTOR'S CHAPTER 11 PLAN

Case 4:10-bk-03640-BMW   Doc 1541   Filed 03/19/14   Entered 03/19/14 17:43:56   Desc
Main Document      Page 11 of 24

Exhibit A Page 5

**b. Payment of the Class 4 Claim.** Upon the earliest to occur of (i) the Maturity Date (as defined below), (ii) a Sale of the property securing said Claim, other than a sale where the Debtor provides all or any portion of the financing for the sale, or (iii) the refinancing of the secured indebtedness against said property, the entire amount of the Class 4 Claims and all accrued-but-unpaid interest thereon (as provided in paragraph 6.1(a), above) shall be due and payable in full; provided, however, that absent a Sale or refinancing of the indebtedness secured by said Property, commencing on the earlier of (i) fifteen (15th) day of the second (2nd) calendar month following the Effective Date, or 45 days after the Effective Date , interest on the Class 4 Claims shall be paid monthly, with the entire amount of the Outstanding Principal and all accrued but- unpaid interest due and payable

as to those Class 4 Claims that are secured by a first position lien (other than real estate taxes) on or before the seventh anniversary of the Effective date and as to those Class 4 Claim that are secured by a 2d or 3d lien position, on or before the fifth anniversary of the Effective Date (the "Maturity Date").

On October 23, 2008, the Court entered an Order Confirming Debtor's Plan of Reorganization Dated December 7, 2007 as Amended ("First Confirmation Order").

On February 8, 2010, the Court entered a Final Decree and Order Closing Case in the First Case.

## C. CURRENT CHAPTER 11 BANKRUPTCY CASE

On February 12, 2010, Debtor commenced this case by filing a second voluntary petition under Chapter 11 of the Bankruptcy Code (the "Second Case").

On April 6, 2010, the Debtor filed its Disclosure Statement for Debtor's Plan of Reorganization Dated April 2, 2010.

On April 6, 2010, Debtor filed its Plan of Reorganization Dated April 2, 2010 (the "Second Plan"). Like Debtor's First Plan, Debtor's Second Plan appeared to classify the Subject Loans as "Class 4 Claims." The Second Plan provides for the following treatment of Class 4 Claims:

6.1      The Class 4 Claimants shall retain their lien and security interest in and to the real property securing said Claim. The Allowed Amount of the Class 4 Allowed Secured Claim shall be paid as follows:

**a. Payment of Interest.**
The holder of the Class 4 Allowed Secured Claims shall receive deferred interest only cash payments based upon the amount of the Outstanding Principal of each such claim, as of the Effective Date calculated at the rate set forth in the first Plan. Commencing on the 1st day of the second calendar month following the Effective Date and on the 1st day of each month thereafter for the remaining term

- 3 -

STIPULATION RE: ORDER TO SHOW CAUSE REGARDING CREDITORS' FAILURE TO COMPLY WITH DEBTOR'S PLAN AND CLARIFYING THE TREATMENT OF WELLS FARGO'S CLAIMS IN DEBTOR'S CHAPTER 11 PLAN

Case 4:10-bk-03640-BMW    Doc 1541    Filed 03/19/14    Entered 03/19/14 17:43:50    Desc
Main Document     Page 12 of 24

**Exhibit A Page 6**

of the payment obligations under the First Plan, interest shall be payable in arrears to the holders of Class 4 Claims.

**b. Payment of Principal.**

Upon the earliest to occur of (i) the expiration of the Plan Period, (ii) the sale of the collateral for a Class 4 Claim , or (ii) the refinancing of the indebtedness for any Class 4 Claim, or (iii) the original maturity date for each Class 4 Claim set forth in the First Plan, the entire amount of the then Outstanding Principal of the Class 4 Claims and all accrued but unpaid interest thereon shall be due and payable in full; provided, ho [*sic*] due and payable in full.

The Second Plan defines "Outstanding Principal" as:

**1.25 "Outstanding Principal"** shall mean an amount equal to the sum of (1) the fair market value of the real assets of the Debtors as of the Effective date; <u>less</u> (2) the sum of all payments made to the holder of any Allowed Secured Claim from and after the Petition Date to Effective Date. The Outstanding Principal shall not include any interest accruing on the Class 4 Allowed Secured Claims between the Petition Date and the Effective Date nor any penalty or default interest or late charges accruing prior to the Effective Date which may be claimed or provided for under the Note. The Outstanding Principal shall also not include any attorneys'

fees or expenses incurred by the holders Class 4 Claims after the Petition Date through and including the Effective date, except to the extent permitted under Bankruptcy Code sec. 506."

On June 9, 2010, the Debtor filed its First Amended Disclosure Statement for Debtor's Plan of Reorganization Dated April 2, 2010 (the "<u>Second Disclosure Statement</u>"). Attached to the Second Disclosure Statement as Exhibit 5 is a schedule of all the properties and lenders with alleged secured claims against the Debtor's bankruptcy estate, the balances of the liens against each property, and the estimated current market value of each property.

On February 10, 2011, the Court issued an Order Confirming Debtor's Plan of Reorganization Dated April 2, 2010 as Modified by First Modification of Plan Dated December 22, 2010 (the "<u>Second Confirmation Order</u>").

On March 6, 2013, the Debtor filed the Motion for Order to Show Cause Directing Secured Creditors to Comply with Terms of Plan (the "<u>OSC Motion</u>") indicating the lenders continued to refuse to abide by the terms of the Second Plan and alleged the Debtor sent the lenders multiple copies of the Compliance Order seeking compliance with the Second Plan. The OSC Motion contained no specific allegations against Ocwen.

STIPULATION RE: ORDER TO SHOW CAUSE REGARDING CREDITORS' FAILURE TO COMPLY WITH DEBTOR'S PLAN AND CLARIFYING THE TREATMENT OF WELLS FARGO'S CLAIMS IN DEBTOR'S CHAPTER 11 PLAN

On March 12, 2013, the Court issued the Order to Show Cause Regarding Creditor's Failure to Comply with Debtor's Plan ("OSC") requiring certain secured creditors of the Debtor to appear and show cause why they should not be held in contempt for failing to comply with the terms of the Second Plan. Attached to the OSC as Exhibit "A" was a list of loans and the corresponding creditors alleged to have violated the Second Plan, which includes the Subject Loan.

On April 11, 2013, the Court held a hearing on the OSC where it instructed all creditors who responded to the OSC to enter into stipulations with the Debtor clarifying the treatment of their respective claims in the Second Plan.

On July 1, 2013, the Court entered the Interim Order Re: Order to Show Cause Regarding Creditors' Failure to Comply with Debtor's Plan (the "Interim Order"), which required the creditors subject to the OSC and the Debtor to negotiate, in good faith, stipulations clarifying the treatment for all claims that were the subject of the OSC.

This Stipulation is being submitted in accordance with the court's April 11, 2013 ruling and the Interim Order and is intended only to address Ocwen's Secured Claim. This Stipulation shall not address Ocwen's Unsecured Claim.

## THE PARTIES STIPULATE AS FOLLOWS:

1.      Ocwen shall have a secured claim in the amount of $150,255.00[1] under Debtor's Second Plan (the "Secured Claim").

2.      Debtor shall tender interest-only payments at an interest rate of 5.6%[2] per annum on Ocwen's Secured Claim commencing April 1, 2011, and continuing on the first day of each month thereafter until November 1, 2015, when all outstanding amounts owing under Ocwen's Secured Claim shall be completely due and payable, via a balloon payment. The interest-only payment shall be in the amount of $701.19. The balloon payment shall be in the amount of the Secured Claim, plus any outstanding interest, fees, costs, and/or other expenses recoverable

---

1 This Secured Claim amounts was derived from numerous discussions and correspondences with Debtor's counsel. Accordingly, Ocwen does not anticipate Debtor will have any objection to this amount.

2 This interest rate is derived from numerous discussions and correspondences with Debtor's counsel. Accordingly, Ocwen does not anticipate Debtor will have any objection to this interest rate and the related interest-only payment.

**STIPULATION RE: ORDER TO SHOW CAUSE REGARDING CREDITORS' FAILURE TO COMPLY WITH DEBTOR'S PLAN AND CLARIFYING THE TREATMENT OF WELLS FARGO'S CLAIMS IN DEBTOR'S CHAPTER 11 PLAN**

under the Second Plan, this Stipulation, and/or the applicable promissory notes and deeds of trust.

3.     The escrow status of the Subject Loan shall be unmodified by the Second Plan and this Stipulation. In other words, in the event Subject Loan was escrowed for taxes and insurance pre-petition, it shall remain escrowed. Alternatively, if the Subject Loan was non-escrowed pre-petition, it shall remain non-escrowed. However, if Debtor fails to maintain real property taxes and hazard insurance post-petition on the Property, Ocwen retains the right to advance funds for real property taxes and hazard insurance on the Property and establish a escrow account as permitted under the applicable promissory note and deed of trust.

4.     In the event the Debtor defaults under the terms of this Stipulation and Second Plan, Ocwen shall be permitted to exercise their rights under the applicable promissory note and deed of trust, and applicable state law. In the event the automatic stay of 11 U.S.C. § 362 is in effect during the Debtor's default, Ocwen shall first be required to obtain relief from the automatic stay prior to exercising its rights under the note, deeds of trust, and applicable state law.

5.     All payments made by Debtor after April 1, 2011 towards the Secured Claim shall be credited to the Secured Claim in accordance with this Stipulation and the Second Plan.

/././

/././

/././

/././

/././

/././

/././

/././

**STIPULATION RE: ORDER TO SHOW CAUSE REGARDING CREDITORS' FAILURE TO COMPLY WITH DEBTOR'S PLAN AND CLARIFYING THE TREATMENT OF WELLS FARGO'S CLAIMS IN DEBTOR'S CHAPTER 11 PLAN**

1    6.    Except as otherwise expressly provided herein, all remaining terms of the

2  applicable promissory note and deed of trust shall govern the treatment of Ocwen's Secured

3  Claim.

4

5                                         **PITE DUNCAN, LLP**

6

7  Dated: _____                 /s/_____

8                                         Josephine E. Salmon
                                          Attorneys for Ocwen Loan Servicing, LLC

9

10                                        **LAW OFFICE OF SCOTT D. GIBSON, PLLC**

11 Dated: _____                 /s/_____

12                                        Scott D. Gibson
                                          Attorney for Deed and Note Traders, L.L.C.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STIPULATION RE: ORDER TO SHOW CAUSE REGARDING CREDITORS' FAILURE TO COMPLY WITH DEBTOR'S PLAN AND CLARIFYING THE TREATMENT OF WELLS FARGO'S CLAIMS IN DEBTOR'S CHAPTER 11 PLAN**

Brian A. Paino (SBN 027091)
bpaino@piteduncan.com
Josephine E. Salmon (SBN 020630)
jsalmon@piteduncan.com
**PITE DUNCAN, LLP**
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
Telephone: (858) 750-7600
Facsimile: (619) 590-1385

Attorneys for Ocwen Loan Servicing, LLC

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re | Case No. 4:10-bk-03640-EWH |
| DEED AND NOTE TRADERS, L.L.C., | Chapter 11 |
| Debtor. | **STIPULATON RE: ORDER TO SHOW CAUSE REGARDING CREDITORS' FAILURE TO COMPLY WITH DEBTOR'S PLAN AND CLARIFYING THE TREATMENT OF CREDITORS' CLAIMS IN DEBTOR'S CHAPTER 11 PLAN** |

**HEARING:**
Date:       March 6, 2014
Time:       3:00 p.m.
Ctrm:       329

This Stipulation Re: Order to Show Cause Regarding Creditors' Failure to Comply with the Debtor's Plan and Clarifying the Treatment of Creditors' Claims in Debtor's Chapter 11 Plan ("<u>Stipulation</u>") is entered into by and between Ocwen Loan Servicing, LLC ("<u>Ocwen</u>"), by and through their attorneys of record, Pite Duncan, LLP, and Debtor, Deed and Note Trader, L.L.C. ("<u>Debtor</u>"), by and through its attorneys of record, Law Office of Scott D. Gibson, PLLC (collectively, the "<u>Parties</u>").

/././

/././

- 1 -
**STIPULATION RE: ORDER TO SHOW CAUSE REGARDING CREDITORS' FAILURE TO COMPLY WITH DEBTOR'S PLAN AND CLARIFYING THE TREATMENT OF WELLS FARGO'S CLAIMS IN DEBTOR'S CHAPTER 11 PLAN**

Case 4:10-bk-03640-EWH   Doc 543   Filed 03/12/14   Entered 03/12/14 17:26:11   Desc
Desc Exhibit A [Proposed Stipulation Regarding Main Document   Page 17 of 24OSC   Page 1 of 8

The real properties which are the subject of this Stipulation are as follows (the "Properties"):

| **Property Address** |
|---|
| 4770 South Cherry Avenue, Tucson, AZ 85614 ("South Cherry Property") |
| 2403 South Holly Stravenue, Tucson, Arizona 85713 ("South Holly Property") |
| 639 N. Sunstream Ln., Tucson, Arizona 85748 ("Sunstream Property") |
| 7730 East Victoria Dr, Tucson, AZ 85730 ("East Victoria Property") |
| 1339 South Avenida Sirio, Tucson, AZ 85710 ("South Avenida Property") |
| 4913 W. Calle Don Roberto, Tucson, Arizona 85757 ("Don Roberto Property") |
| 1414 W. Sonora St., Tucson, Arizona 85745 ("Sonora Street Property") |

## RECITALS

**A. SUBJECT PROPERTY**

Ocwen has secured claims against Debtor's bankruptcy estate secured by the Properties. Ocwen's claims shall be hereafter referred to as the "Subject Loans".

**B. FIRST CHAPTER 11 BANKRUPTCY CASE**

On December 7, 2007, Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the District of Arizona (the "First Case"), which was assigned case number 4:07-bk-01734-EWH.

On December 26, 2007, Debtor filed a Disclosure Statement and Plan of Reorganization Dated December 7, 2007.

/././

/././

STIPULATION RE: ORDER TO SHOW CAUSE REGARDING CREDITORS' FAILURE TO COMPLY WITH DEBTOR'S PLAN AND CLARIFYING THE TREATMENT OF WELLS FARGO'S CLAIMS IN DEBTOR'S CHAPTER 11 PLAN

Subsequently, on April 24, 2008, Debtor filed a First Amended Chapter 11 Plan of Reorganization. Finally, on May 22, 2008, Debtor filed a Second Amended Chapter 11 Plan of Reorganization (the "First Plan").

Debtor's First Plan appears to classify the Subject Loan as a "Class 4 Claims" and provided for the following treatment of those respective claims:

**6.1** The Class 4 Claimants shall retain their lien and security interest in and to the real property securing said Claim, and all other terms and conditions of the loan and security documents evidencing such Claim will remain unchanged except as modified by this Plan. The Allowed Amount of the Class 4 Allowed Secured Claim shall be paid as follows:

**a. Arrearages.** All accrued and unpaid interest (calculated at the contract rate and not at any default rate) which has accrued (but not yet payable) or is presently due under the loan documents evidencing the Class 4 Claims shall be added to the principal balance owing thereon as of the Effective Date (unless the parties have stipulated to an earlier date). (The sum of such arrearages and the unpaid principal balance as of the Petition Date are hereinafter referred to as the "Outstanding Principal".) The holders of the Class 4 Allowed Secured Claim shall receive deferred interest only payments on the Outstanding Principal together with interest at the rate established by Bankrate.com for thirty year residential mortgages in Tucson, AZ, from and after the Effective Date. If any holder of a Class 4 Claim provides credible evidence that value for the collateral establishes a loan to value ratio of more than 80%, the interest rate applicable to such loan shall be increased by 0.75%. The Debtor reserves the right to object to the value asserted by any Class 4 Claimant, in which case, the Court shall determine the value for each such parcel of real estate.

**b. Payment of the Class 4 Claim.** Upon the earliest to occur of (i) the Maturity Date (as defined below), (ii) a Sale of the property securing said Claim, other than a sale where the Debtor provides all or any portion of the financing for the sale, or (iii) the refinancing of the secured indebtedness against said property, the entire amount of the Class 4 Claims and all accrued-but-unpaid interest thereon (as provided in paragraph 6.1(a), above) shall be due and payable in full; provided, however, that absent a Sale or refinancing of the indebtedness secured by said Property, commencing on the earlier of (i) fifteen (15th) day of the second (2nd) calendar month following the Effective Date, or 45 days after the Effective Date , interest on the Class 4 Claims shall be paid monthly, with the entire amount of the Outstanding Principal and all accrued but- unpaid interest due and payable

as to those Class 4 Claims that are secured by a first position lien (other than real estate taxes) on or before the seventh anniversary of the Effective date and as to those Class 4 Claim that are secured by a 2d or 3d lien position, on or before the fifth anniversary of the Effective Date (the "Maturity Date").

On October 23, 2008, the Court entered an Order Confirming Debtor's Plan of Reorganization Dated December 7, 2007 as Amended ("First Confirmation Order").

- 3 -

**STIPULATION RE: ORDER TO SHOW CAUSE REGARDING CREDITORS' FAILURE TO COMPLY WITH DEBTOR'S PLAN AND CLARIFYING THE TREATMENT OF WELLS FARGO'S CLAIMS IN DEBTOR'S CHAPTER 11 PLAN**

On February 8, 2010, the Court entered a Final Decree and Order Closing Case in the First Case.

## C. CURRENT CHAPTER 11 BANKRUPTCY CASE

On February 12, 2010, Debtor commenced this case by filing a second voluntary petition under Chapter 11 of the Bankruptcy Code (the "<u>Second Case</u>").

On April 6, 2010, the Debtor filed its Disclosure Statement for Debtor's Plan of Reorganization Dated April 2, 2010.

On April 6, 2010, Debtor filed its Plan of Reorganization Dated April 2, 2010 (the "<u>Second Plan</u>"). Like Debtor's First Plan, Debtor's Second Plan appeared to classify the Subject Loans as "Class 4 Claims." The Second Plan provides for the following treatment of Class 4 Claims:

6.1    The Class 4 Claimants shall retain their lien and security interest in and to the real property securing said Claim. The Allowed Amount of the Class 4 Allowed Secured Claim shall be paid as follows:

**a. Payment of Interest.**
The holder of the Class 4 Allowed Secured Claims shall receive deferred interest only cash payments based upon the amount of the Outstanding Principal of each such claim, as of the Effective Date calculated at the rate set forth in the first Plan. Commencing on the 1st day of the second calendar month following the Effective Date and on the 1st day of each month thereafter for the remaining term of the payment obligations under the First Plan, interest shall be payable in arrears to the holders of Class 4 Claims.

**b. Payment of Principal.**
Upon the earliest to occur of (i) the expiration of the Plan Period, (ii) the sale of the collateral for a Class 4 Claim , or (ii) the refinancing of the indebtedness for any Class 4 Claim, or (iii) the original maturity date for each Class 4 Claim set forth in the First Plan, the entire amount of the then Outstanding Principal of the Class 4 Claims and all accrued but unpaid interest thereon shall be due and payable in full; provided, ho [*sic*] due and payable in full.

The Second Plan defines "Outstanding Principal" as:

1.25 "<u>**Outstanding Principal**</u>" shall mean an amount equal to the sum of (1) the fair market value of the real assets of the Debtors as of the Effective date; <u>less</u> (2) the sum of all payments made to the holder of any Allowed Secured Claim from and after the Petition Date to Effective Date. The Outstanding Principal shall not include any interest accruing on the Class 4 Allowed Secured Claims between the Petition Date and the Effective Date nor any penalty or default interest or late charges accruing prior to the Effective Date which may be claimed or provided for under the Note. The Outstanding Principal shall also not include any attorneys'

- 4 -

**STIPULATION RE: ORDER TO SHOW CAUSE REGARDING CREDITORS' FAILURE TO COMPLY WITH DEBTOR'S PLAN AND CLARIFYING THE TREATMENT OF WELLS FARGO'S CLAIMS IN DEBTOR'S CHAPTER 11 PLAN**

Case 4:10-bk-03464-BMW   Doc 545-37   Filed 03/27/14   Entered 03/27/14 17:25:12   Desc
Exhibit A [Proposed] Stipulation   Page 20 of 24

fees or expenses incurred by the holders Class 4 Claims after the Petition Date through and including the Effective date, except to the extent permitted under Bankruptcy Code sec. 506."

On June 9, 2010, the Debtor filed its First Amended Disclosure Statement for Debtor's Plan of Reorganization Dated April 2, 2010 (the "Second Disclosure Statement"). Attached to the Second Disclosure Statement as Exhibit 5 is a schedule of all the properties and lenders with alleged secured claims against the Debtor's bankruptcy estate, the balances of the liens against each property, and the estimated current market value of each property.

On February 10, 2011, the Court issued an Order Confirming Debtor's Plan of Reorganization Dated April 2, 2010 as Modified by First Modification of Plan Dated December 22, 2010 (the "Second Confirmation Order").

On March 6, 2013, the Debtor filed the Motion for Order to Show Cause Directing Secured Creditors to Comply with Terms of Plan (the "OSC Motion") indicating the lenders continued to refuse to abide by the terms of the Second Plan and alleged the Debtor sent the lenders multiple copies of the Compliance Order seeking compliance with the Second Plan. The OSC Motion contained no specific allegations against Ocwen.

On March 12, 2013, the Court issued the Order to Show Cause Regarding Creditor's Failure to Comply with Debtor's Plan ("OSC") requiring certain secured creditors of the Debtor to appear and show cause why they should not be held in contempt for failing to comply with the terms of the Second Plan. Attached to the OSC as Exhibit "A" was a list of loans and the corresponding creditors alleged to have violated the Second Plan, which includes the Subject Loans.

On April 11, 2013, the Court held a hearing on the OSC where it instructed all creditors who responded to the OSC to enter into stipulations with the Debtor clarifying the treatment of their respective claims in the Second Plan.

On July 1, 2013, the Court entered the Interim Order Re: Order to Show Cause Regarding Creditors' Failure to Comply with Debtor's Plan (the "Interim Order"), which required the

- 5 -

STIPULATION RE: ORDER TO SHOW CAUSE REGARDING CREDITORS' FAILURE TO COMPLY WITH DEBTOR'S PLAN AND CLARIFYING THE TREATMENT OF WELLS FARGO'S CLAIMS IN DEBTOR'S CHAPTER 11 PLAN

Case 4:10-bk-36464-BMW Doc 547 Filed 03/09/21 Entered 03/09/21 14:37:25 Desc Exhibit A [Proposed] Stipulation Re OSC Page 5 of 8

creditors subject to the OSC and the Debtor to negotiate, in good faith, stipulations clarifying the treatment for all claims that were the subject of the OSC.

This Stipulation is being submitted in accordance with the court's April 11, 2013 ruling and the Interim Order and is intended only to address Ocwen's Secured Claim. This Stipulation shall not address Ocwen's Unsecured Claim.

**THE PARTIES STIPULATE AS FOLLOWS:**

1.    Ocwen shall have secured claims in the following amounts under Debtor's Second Plan (collectively, the "<u>Secured Claims</u>"):[1]

| Property Address | Secured Claim Amount |
|---|---|
| South Cherry Property | $70,000.00 |
| South Holly Property | $55,000.00 |
| Sunstream Property | $220,000.00 |
| East Victoria Property | $120,283.00 |
| South Avenida Property | $224,600.85 |
| Don Roberto Property | $125,900.00 |
| Sonora Street Property | $104,000.00 |

2.    Debtor shall tender interest-only payments at an interest rate of 5.6%[2] per annum on Ocwen's Secured Claims commencing April 1, 2011, and continuing on the first day of each month thereafter until November 1, 2015, when all outstanding amounts owing under Ocwen's Secured Claims shall be completely due and payable, via a balloon payment. The interest-only payment shall be in the following amounts:

---

[1] These Secured Claim amounts were derived from numerous discussions and correspondences with Debtor's counsel. Accordingly, Ocwen does not anticipate Debtor will have any objection to these amounts.

[2] This interest rate is derived from numerous discussions and correspondences with Debtor's counsel. Accordingly, Ocwen does not anticipate Debtor will have any objection to this interest rate and the related interest-only payment.

**STIPULATION RE: ORDER TO SHOW CAUSE REGARDING CREDITORS' FAILURE TO COMPLY WITH DEBTOR'S PLAN AND CLARIFYING THE TREATMENT OF WELLS FARGO'S CLAIMS IN DEBTOR'S CHAPTER 11 PLAN**

| Property Address | Interest-Only Payment[3] |
|---|---|
| South Cherry Property | $326.67 |
| South Holly Property | $256.67 |
| Sunstream Property | $1026.67 |
| East Victoria Property | $561.32 |
| South Avenida Property | $1,048.14 |
| Don Roberto Property | $587.54 |
| Sonora Street Property | $485.34 |

The balloon payments shall be in the amount of the Secured Claims, plus any outstanding interest, fees, costs, and/or other expenses recoverable under the Second Plan, this Stipulation, and/or the applicable promissory notes and deeds of trust.

3.       The escrow status of the Subject Loans shall be unmodified by the Second Plan and this Stipulation. In other words, in the event Subject Loans were escrowed for taxes and insurance pre-petition, they shall remain escrowed. Alternatively, if the Subject Loans were non-escrowed pre-petition, they shall remain non-escrowed. However, if Debtor fails to maintain real property taxes and hazard insurance post-petition on the Properties, Ocwen retains the rights to advance funds for real property taxes and hazard insurance on the Properties and establish escrow accounts as permitted under the applicable promissory notes and deeds of trust.

4.       In the event the Debtor defaults under the terms of this Stipulation and Second Plan, Ocwen shall be permitted to exercise their rights under the applicable promissory notes and deeds of trust, and applicable state law. In the event the automatic stay of 11 U.S.C. § 362 is in effect during the Debtor's default, Ocwen shall first be required to obtain relief from the automatic stay prior to exercising its rights under the notes, deeds of trust, and applicable state law.

/././

---

3 These interest-only payments are rounded numbers and, as a result, the actual monthly payment may be no more than $.01 different.

**STIPULATION RE: ORDER TO SHOW CAUSE REGARDING CREDITORS' FAILURE TO COMPLY WITH DEBTOR'S PLAN AND CLARIFYING THE TREATMENT OF WELLS FARGO'S CLAIMS IN DEBTOR'S CHAPTER 11 PLAN**

5.      All payments made by Debtor after April 1, 2011 towards the Secured Claims shall be credited to the Secured Claims in accordance with this Stipulation and the Second Plan.

6.      Except as otherwise expressly provided herein, all remaining terms of the applicable promissory notes and deeds of trust shall govern the treatment of Ocwen's Secured Claims.


**PITE DUNCAN, LLP**


Dated: _____                    */s/*_____
                                          Josephine E. Salmon
                                          Attorneys for Ocwen Loan Servicing, LLC


**LAW OFFICE OF SCOTT D. GIBSON, PLLC**


Dated: _____                    */s/*_____
                                          Scott D. Gibson
                                          Attorney for Deed and Note Traders, L.L.C.

**STIPULATION RE: ORDER TO SHOW CAUSE REGARDING CREDITORS' FAILURE TO COMPLY WITH DEBTOR'S PLAN AND CLARIFYING THE TREATMENT OF WELLS FARGO'S CLAIMS IN DEBTOR'S CHAPTER 11 PLAN**