# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE NINTH CIRCUIT

In re: DEED AND NOTE TRADERS, L.L.C.

Debtor

------------------------------

DEED AND NOTE TRADERS, LLC

Appellant

v.

AMERICA'S SERVICING COMPANY, dba Wells Fargo Bank N.A.; BANK OF AMERICA, N.A., Successor by Merger to BAC Home Loans Servicing LP; CALIBER HOME LOANS, INC., as servicer for LSF9 Master Participation Trust; CITIMORTGAGE, INC.; DITECH FINANCIAL LLC, f/k/a Green Tree Servicing LLC; GREEN TREE SERVICING, LLC; FLAGSTAR BANK; NATIONSTAR MORTGAGE; OCWEN LOAN SERVICING LLC; PNC MORTGAGE, a division of PNC Bank, NA; RESIDENTIAL CREDIT SOLUTION, INC., as Servicer for J.P. Morgan Acquisition Corp.; SETERUS INC.; WELLS FARGO BANK, N.A.; CHRISTIANA TRUST, a Division of Wilmington Savings Fund Society, FSB, as Trustee for Normandy Mortgage Services Loan Trust, Series 2013-17, as serviced by Rushmore Loan Management Services LLC; U.S. BANK NATIONAL ASSOCIATION, as Trustee for Citigroup Mortgage Loan Trust Inc., Asset-Backed Pass-Through Certificates, Series 2007-AMC1; DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee, on behalf of the holders of WaMu Mortgage Pass-Through Certificates, Series 2006-AR1, by and

BAP No. AZ-17-1055-KuBL

Bankr. No. 4:10-bk-03640-BMW
Chapter 11

April 4, 2018

through its servicing agent, Select Portfolio
Servicing, Inc.; FAY SERVICING, LLC;
JPMORGAN CHASE BANK N.A.; J.P.
MORGAN MORTGAGE ACQUISITION
CORPORATION; RUSHMORE LOAN
MANAGEMENT SERVICES, LLC; U.S.
BANK NATIONAL ASSOCIATION, as
Trustee for Terwin Mortgage Trust
2005-8HE, Asset-Backed Certificates, Series
2005-8HE, as serviced by Specialized Loan
Servicing,LLC; WILMINGTON TRUST,
NATIONAL ASSOCIATION, as Successor
Trustee to Citibank, N.A., as Trustee for Bear
Stearns ALT-A Trust 2006-4, Mortgage
Pass-Through Certificates, Series 2006-4, by
and through its servicing agent, Select
Portfolio Servicing, Inc.; SPECIALIZED
LOAN SERVICING LLC; THE BANK OF
NEW YORK MELLON, f/k/a, The Bank of
New York, successor in interest to JP Morgan
Chase Bank, N.A. as Trustee for Structured
Asset Mortgage Investments II Inc. Bear
Stearns ALT-A Trust, Morgage Pass-Through
Certificates, Series 2005-7; THE BANK OF
NEW YORK MELLON, f/k/a, The Bank of
New York, successor in interest to JP Morgan
Chase Bank, N.A. as Trustee for Structured
Assett Mortgage Investments II Inc. Bear
Stearns ALT-A Trust, Mortgage
Pass-Through Certificates, Series 2005-8;
HOMEWARD RESIDENTIAL, INC.;
DEUTSCHE BANK NATIONAL TRUST
COMPANY, as Trustee, in trust for
Registered Holders of Soundview Home
Loan Trust 2007-WMC1, Asset Backed
Certificates, Series 2007-WMC1, through
servicing agent Select Portfolio Servicing, Inc.

Appellees

---

## **PROOF OF SERVICE OF MANDATE**

A certified copy of the attached judgment was sent to:

CLERK

U.S. BANKRUPTCY COURT

BkCt, Tucson
U.S. Bankruptcy Court
James A. Walsh United States Courthouse
38 South Scott Avenue
Tucson, AZ 85701-1704

Honorable Brenda Moody Whinery
U.S. Bankruptcy Court
James A. Walsh United States Courthouse
38 South Scott Avenue
Room 301
Tucson, AZ 85701-1704

on April 4, 2018
By: Patti Ippolito, Deputy Clerk

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

In re: DEED AND NOTE TRADERS, L.L.C.

Debtor

--------------------------------

DEED AND NOTE TRADERS, LLC

Appellant

v.

AMERICA'S SERVICING COMPANY, dba
Wells Fargo Bank N.A.; BANK OF
AMERICA, N.A., Successor by Merger to
BAC Home Loans Servicing LP; CALIBER
HOME LOANS, INC., as servicer for LSF9
Master Participation Trust;
CITIMORTGAGE, INC.; DITECH
FINANCIAL LLC, f/k/a Green Tree
Servicing LLC; GREEN TREE SERVICING,
LLC; FLAGSTAR BANK; NATIONSTAR
MORTGAGE; OCWEN LOAN SERVICING
LLC; PNC MORTGAGE, a division of PNC
Bank, NA; RESIDENTIAL CREDIT
SOLUTION, INC., as Servicer for J.P.
Morgan Acquisition Corp.; SETERUS INC.;
WELLS FARGO BANK, N.A.;
CHRISTIANA TRUST, a Division of
Wilmington Savings Fund Society, FSB, as
Trustee for Normandy Mortgage Services
Loan Trust, Series 2013-17, as serviced by
Rushmore Loan Management Services LLC;
U.S. BANK NATIONAL ASSOCIATION, as
Trustee for Citigroup Mortgage Loan Trust
Inc., Asset-Backed Pass-Through
Certificates, Series 2007-AMC1;
DEUTSCHE BANK NATIONAL TRUST
COMPANY, as Trustee, on behalf of the
holders of WaMu Mortgage Pass-Through
Certificates, Series 2006-AR1, by and

BAP No. AZ-17-1055-KuBL

Bankr. No. 4:10-bk-03640-BMW
Chapter 11

March 14, 2018

through its servicing agent, Select Portfolio
Servicing, Inc.; FAY SERVICING, LLC;
JPMORGAN CHASE BANK N.A.; J.P.
MORGAN MORTGAGE ACQUISITION
CORPORATION; RUSHMORE LOAN
MANAGEMENT SERVICES, LLC; U.S.
BANK NATIONAL ASSOCIATION, as
Trustee for Terwin Mortgage Trust
2005-8HE, Asset-Backed Certificates, Series
2005-8HE, as serviced by Specialized Loan
Servicing,LLC; WILMINGTON TRUST,
NATIONAL ASSOCIATION, as Successor
Trustee to Citibank, N.A., as Trustee for Bear
Stearns ALT-A Trust 2006-4, Mortgage
Pass-Through Certificates, Series 2006-4, by
and through its servicing agent, Select
Portfolio Servicing, Inc.; SPECIALIZED
LOAN SERVICING LLC; THE BANK OF
NEW YORK MELLON, f/k/a, The Bank of
New York, successor in interest to JP Morgan
Chase Bank, N.A. as Trustee for Structured
Asset Mortgage Investments II Inc. Bear
Stearns ALT-A Trust, Morgage Pass-Through
Certificates, Series 2005-7; THE BANK OF
NEW YORK MELLON, f/k/a, The Bank of
New York, successor in interest to JP Morgan
Chase Bank, N.A. as Trustee for Structured
Assett Mortgage Investments II Inc. Bear
Stearns ALT-A Trust, Mortgage
Pass-Through Certificates, Series 2005-8;
HOMEWARD RESIDENTIAL, INC.;
DEUTSCHE BANK NATIONAL TRUST
COMPANY, as Trustee, in trust for
Registered Holders of Soundview Home
Loan Trust 2007-WMC1, Asset Backed
Certificates, Series 2007-WMC1, through
servicing agent Select Portfolio Servicing, Inc.

Appellees

# FILED

MAR 14 2018

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# JUDGMENT

ON APPEAL from the United States Bankruptcy Court for Arizona - Tucson.

THIS CAUSE came on to be heard on the record from the above court.

ON CONSIDERATION WHEREOF, it is ordered and adjudged by this Panel that the judgment of the Bankruptcy Court is AFFIRMED.

**FOR THE PANEL,**

Susan M Spraul
Clerk of Court
**By:** Patti Ippolito, Deputy Clerk

BANKRUPTCY APPELLATE PANEL
OF THE NINTH CIRCUIT
A True Copy
Attest:

Susan M. Spraul, Clerk

by Deputy Clerk

FILED

**NOT FOR PUBLICATION**

MAR 14 2018

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

### UNITED STATES BANKRUPTCY APPELLATE PANEL
### OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | ) BAP No. AZ-17-1055-KuBL |
| | ) |
| DEED AND NOTE TRADERS, L.L.C., | ) Bk. No. 4:10-bk-03640-BMW |
| | ) |
| Debtor. | ) |
| _____ | ) |
| | ) |
| DEED AND NOTE TRADERS, L.L.C., | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) **M E M O R A N D U M** * |
| | ) |
| AMERICA'S SERVICING COMPANY, dba | ) |
| Wells Fargo Bank N.A.; BANK OF | ) |
| AMERICA, N.A., Successor by Merger | ) |
| to BAC Home Loans Servicing LP; | ) |
| CALIBER HOME LOANS, INC., as | ) |
| servicer for LSF9 Master | ) |
| Participation Trust; CITIMORTGAGE, | ) |
| INC.; DITECH FINANCIAL LLC, f/k/a | ) |
| Green Tree Servicing LLC; GREEN | ) |
| TREE SERVICING, LLC; FLAGSTAR BANK; | ) |
| NATIONSTAR MORTGAGE; OCWEN LOAN | ) |
| SERVICING LLC; PNC MORTGAGE, a | ) |
| division of PNC Bank, NA; | ) |
| RESIDENTIAL CREDIT SOLUTION, INC., | ) |
| as Servicer for J.P. Morgan | ) |
| Acquisition Corp.; SETERUS INC.; | ) |
| WELLS FARGO BANK, N.A.; CHRISTIANA | ) |
| TRUST, a Division of Wilmington | ) |
| Savings Fund Society, FSB, as | ) |
| Trustee for Normandy Mortgage | ) |
| Services Loan Trust, Series | ) |
| 2013-17, as serviced by Rushmore | ) |
| Loan Management Services LLC; U.S. | ) |
| BANK NATIONAL ASSOCIATION, as | ) |
| Trustee for Citigroup Mortgage Loan | ) |
| Trust Inc., Asset-Backed Pass- | ) |
| Through Certificates, Series | ) |

---

   * This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

-1-

```
 1   2007-AMC1; DEUTSCHE BANK NATIONAL   )
     TRUST COMPANY, as Trustee, on       )
 2   behalf of the holders of WaMu       )
     Mortgage Pass-Through Certificates, )
 3   Series 2006-AR1, by and through its )
     servicing agent, Select Portfolio   )
 4   Servicing, Inc.; FAY SERVICING,     )
     LLC; JPMORGAN CHASE BANK N.A.; J.P. )
 5   MORGAN MORTGAGE ACQUISITION         )
     CORPORATION; RUSHMORE LOAN          )
 6   MANAGEMENT SERVICES, LLC; U.S. BANK )
     NATIONAL ASSOCIATION, as Trustee    )
 7   for Terwin Mortgage Trust 2005-8HE, )
     Asset-Backed Certificates, Series   )
 8   2005-8HE, as serviced by            )
     Specialized Loan Servicing, LLC;    )
 9   WILMINGTON TRUST, NATIONAL          )
     ASSOCIATION, as Successor Trustee   )
10   to Citibank, N.A., as Trustee for   )
     Bear Stearns ALT-A Trust 2006-4,    )
11   Mortgage Pass-Through Certificates, )
     Series 2006-4, by and through its   )
12   servicing agent, Select Portfolio   )
     Servicing, Inc.; SPECIALIZED LOAN   )
13   SERVICING LLC; THE BANK OF NEW YORK )
     MELLON, f/k/a, The Bank of New      )
14   York, successor in interest to JP   )
     Morgan Chase Bank, N.A. as Trustee  )
15   for Structured Asset Mortgage       )
     Investments II Inc. Bear Stearns    )
16   ALT-A Trust, Mortgage Pass-Through  )
     Certificates, Series 2005-7; THE    )
17   BANK OF NEW YORK MELLON, f/k/a, The )
     Bank of New York, successor in      )
18   interest to JP Morgan Chase Bank,   )
     N.A. as Trustee for Structured      )
19   Asset Mortgage Investments II Inc.  )
     Bear Stearns ALT-A Trust, Mortgage  )
20   Pass-Through Certificates, Series   )
     2005-8; HOMEWARD RESIDENTIAL, INC.; )
21   DEUTSCHE BANK NATIONAL TRUST        )
     COMPANY, as Trustee, in trust for   )
22   Registered Holders of Soundview     )
     Home Loan Trust 2007-WMC1, Asset    )
23   Backed Certificates, Series         )
     2007-WMC1, through servicing agent  )
24   Select Portfolio Servicing, Inc.,   )
                                         )
25                   Appellees.          )
     _____)
26
                Argued and Submitted on February 23, 2018
27                        at Phoenix, Arizona

28                     Filed - March 14, 2018
```

-2-

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable Brenda Moody Whinery, Bankruptcy Judge, Presiding

_____

Appearances:    Scott D. Gibson argued for appellant Deed and
Note Traders, L.L.C.; Craig Goldblatt of Wilmer
Cutler Pickering Hale & Dorr LLP argued for
appellee Bank of America N.A.; Katherine Anderson
Sanchez of Dickinson Wright PLLC argued for
appellee Flagstar Bank; Kyle S. Hirsch of Bryan
Cave LLP argued for appellees JPMorgan Chase Bank
N.A. and J.P. Morgan Mortgage Acquisition
Corporation; Steven D. Jerome of Snell & Wilmer
LLP appeared for appellees America's Servicing
Company and Wells Fargo Bank, N.A.; Leticia
Butler appeared for appellee Caliber Home Loans,
Inc.; Janet M. Spears of Aldridge Pite, LLP
appeared for appellees Citimortgage, Inc., Fay
Servicing, LLC, and Rushmore Loan Management
Services, LLC; Amelia B. Valenzuela of Quarles &
Brady LLP appeared for appellees Deutsche Bank
National Trust Company and Residential Credit
Solution, Inc.; Michael Bosco appeared for
appellees Nationstar Mortgage and PNC Mortgage;
Solomon S. Krotzer appeared for appellee Ocwen
Loan Servicing LLC; Aaron Michael Waite of
Weinstein & Riley, PS appeared for appellees
Specialized Loan Servicing LLC, The Bank of New
York Mellon, and U.S. Bank National Association.

_____

Before:  KURTZ, BRAND, and LAFFERTY, Bankruptcy Judges.

When Deed and Note Traders, LLC (Debtor) filed its second

chapter 11[1] petition, it owned over 150 residential properties,

each secured by separate notes held by a variety of lenders and

loan servicers (Secured Creditors), including appellees.  Debtor

confirmed its plan of reorganization and later filed a motion

for an order to show cause (OSC Motion), seeking to have certain

_____

[1] Unless otherwise indicated, all chapter and section
references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532,
Rule references are to the Federal Rules of Bankruptcy Procedure,
and Civil Rule references are to the Federal Rules of Civil
Procedure.

-3-

Secured Creditors held in contempt for failing to comply with
the terms of the plan.  The bankruptcy court held numerous
hearings on the OSC Motion over a five-year period, and gave
Debtor multiple opportunities to supplement its allegations of
contempt with clear and convincing evidence and provide proof of
damages in connection with each property.

At the last hearing, the bankruptcy court took the matter
under advisement and later issued its Ruling and Order Regarding
Debtor's Application For An Order to Show Cause Re: Contempt and
Debtor's Motion to Modify the Plan.[2]  The court denied the OSC
Motion, as supplemented, finding that Debtor failed to provide
clear and convincing evidence showing that any of the Secured
Creditors had failed to comply with the confirmed plan.  The
bankruptcy court further found that even if Debtor had made a
prima facie case for contempt, it failed to provide proof of
damages.  Debtor appeals from this ruling.  We AFFIRM.

### I. FACTS[3]

Debtor is an Arizona limited liability company that was
formed in 1993.  Since then, it has engaged in the real estate
business in Tucson, Arizona, purchasing, rehabilitating, leasing
and selling residential properties.

---

[2] The order on appeal also denied Debtor's motion to modify
its confirmed plan.  Debtor has not put that ruling at issue in
this appeal.  Thus, we do not consider it.  See Padgett v.
Wright, 587 F.3d 983, 985 n.2 (9th Cir. 2009).

[3] For the background facts and procedural history, we borrow
heavily from the facts set forth in In re Deed and Note Traders,
LLC, BAP Nos. AZ-11-1091-PaDJu, AZ-11-1092-PaDJu, 2012 WL 1191891
(9th Cir. BAP Apr. 5, 2012) and the bankruptcy court's ruling and
order that is the subject of this appeal.

-4-

1      Debtor financed the acquisition of its properties using its

2  own operating income and through the many loans it obtained from

3  individual investors.  These were generally short-term, high

4  interest loans.  Debtor's business plan was to hold a property

5  for about a year, during which time Debtor would rehabilitate

6  the property, and then refinance the loan with traditional

7  lenders at market rates.  As property values increased, Debtor

8  would sell property in its inventory at a profit.

9      In December 2006, the Arizona attorney general investigated

10  Debtor's business practices and, after lengthy negotiations, the

11  parties entered into a consent agreement.  Under the terms of

12  the agreement, Debtor was required to sell a number of houses

13  back to their original owners and to pay significant attorney

14  fees incurred by the state.  These payments and transactions

15  occurred at the beginning of a declining real estate market and,

16  according to Debtor, practically eliminated its operating

17  reserves.  Debtor's financial problems were exacerbated in

18  August 2007 when First Magnus Financial Corporation, a large

19  provider of traditional and other residential loan programs in

20  Arizona, shut down and filed for bankruptcy.

21  **A.    Debtor's First Bankruptcy Case**

22      The combination of fines, the loss of funding sources for

23  buyers from Debtor's inventory, and the corresponding loss of

24  sales revenue caused Debtor to file its first chapter 11

25  petition in September 2007.  There were over 159 properties

26  involved, valued at over $40 million, with $30 million in

27  secured claims against those properties.

28      Debtor filed its plan and disclosure statement in December

-5-

1  2007.  The plan was amended on April 24 and May 22, 2008 (First

2  Plan).  The First Plan classified the Secured Creditors in

3  Class 4.  All Class 4 claimants would retain their respective

4  security interests on the properties securing their claims and

5  would be paid as follows:

6  **Payment of the Class 4 Claim.**  Upon the earliest to
   occur of (i) the Maturity Date (as defined below),

7  (ii) a Sale of the property securing said Claim, other
   than a sale where the Debtor provides all or any

8  portion of the financing for the sale, or (iii) the
   refinancing of the secured indebtedness against said

9  property, the entire amount of the Class 4 Claims and
   all accrued-but-unpaid interest thereon (as provided

10 in paragraph 6.1(a), above) shall be due and payable
   in full; provided, however, that absent a Sale or

11 refinancing of the indebtedness secured by said
   Property, commencing on the earlier of (i) fifteenth

12 (15th) day of the second (2nd) calendar month
   following the Effective Date, or 45 days after the

13 Effective Date, interest on the Class 4 Claims shall
   be paid monthly, with the entire amount of the

14 Outstanding Principal and all accrued-but-unpaid
   interest due and payable as to those Class 4 Claims

15 that are secured by a first position lien (other than
   real estate taxes) on or before the seventh

16 anniversary of the Effective date and as to those
   Class 4 Claim that are secured by a 2d or 3d lien

17 position, on or before the fifth anniversary of the
   Effective Date (the "Maturity Date").

18

19     In October 2008, the bankruptcy court entered an Order

20 Confirming Debtor's Plan of Reorganization Dated December 7,

21 2007, as Amended.  About three months later, the bankruptcy

22 court entered a final decree and order closing the case on the

23 basis that payments had commenced under the First Plan and

24 Debtor had substantially consummated the plan under § 1101.

25 **B.    The Current Chapter 11 Bankruptcy Case**

26     Four days after the closing of the First Case, Debtor filed

27

28

1  a second chapter 11 petition on February 12, 2010.[4]

2  **1.  The Confirmation of Debtor's Second Plan**

3  In April 2010, Debtor proposed a plan of reorganization

4  (Second Plan).  The only significant difference between the

5  First and Second Plans was Debtor's proposal to reduce the

6  Class 4 Secured Creditors' allowed claims to the "market value"

7  of the properties securing those claims as of the effective date

8  of the plan; i.e., the Second Plan proposed to "cram down" these

9  claims.

10  In June 2010, Debtor filed its First Amended Disclosure

11  Statement for Debtor's Plan of Reorganization Dated April 2,

12  2010 (Amended Disclosure Statement).  Attached as Exhibit 5 was

13  a schedule of all of the properties and lenders with alleged

14  secured claims against Debtor's bankruptcy estates, the balances

15  of the liens against each property, and the estimated current

16  fair market value of each property.

17  Debtor's manager submitted a declaration in support of

18  confirmation of the Second Plan stating: "In filing this case,

19  the Debtor did not attempt in any way to alter the payment due

20  its creditors as established in the Plan for the First

21  Chapter 11, but only to attempt to reduce the debt amounts to

22  reflect current market value of the properties as permitted

23  under section 506 of the Bankruptcy Code."  Attached to the

24  declaration was an exhibit which showed the property address,

25  the lender name, the current loan balance, the current fair

26  market value, the current new loan amount at current fair market

27

28  [4] The case was assigned to Judge Eileen Hollowell.

-7-

1  value, a proposed new interest payment, and the monthly rental

2  income, if applicable.

3      In February 2011, the bankruptcy court entered an order

4  confirming Debtor's Second Plan (Second Confirmation Order).

5  Under the terms of the confirmed plan, Class 4 Secured Creditors

6  were to receive interest only payments at a rate of 5.6% for the

7  duration of the plan based upon the readjusted value of the

8  property as determined by the bankruptcy court.  After the

9  Second Confirmation Order was entered, the bankruptcy court

10 entered orders approving stipulations between Debtor and Secured

11 Creditors regarding the current fair market value of the

12 relevant properties.  If the current fair market value of a

13 property was not resolved by stipulation, the bankruptcy court

14 determined the value based on the evidence in the record and

15 entered orders accordingly.

16     Several Secured Creditors appealed the Second Confirmation

17 Order to this Panel.  The Panel affirmed the bankruptcy court's

18 order confirming the plan in In re Deed and Note Traders, LLC,

19 2012 WL 1191891.

20     **2.  The First Motion And Order Directing Secured Creditors
        To Comply With The Terms Of The Second Plan**

21

22     In September 2012 — months after the Second Confirmation

23 Order was entered and upheld on appeal — Debtor filed a Motion

24 for Entry of Order Directing Lenders to Comply with Terms of

25 Confirmed Plan of Reorganization or Be Subject to Contempt

26 Citation (Motion to Comply).  Debtor alleged that most of its

27 Secured Creditors had ignored the plan and continued to insist

28 that Debtor pay its mortgage according to the original terms of

-8-

the loans.  Exhibit "A" to the Motion to Comply attached
correspondence sent by various Secured Creditors to Debtor.
Debtor maintained that this correspondence established that most
of its Secured Creditors were not complying with the terms of
the Second Plan.

The bankruptcy court issued an Order Directing Secured
Creditors to Comply with Terms of Plan (Order to Comply).  The
order required all Class 4 Secured Creditors to accept payments
from Debtor as provided for under the Second Plan and to amend
their records to reflect their treatment in the Second Plan.  If
a Secured Creditor failed to abide by the order, Debtor was to
file a motion requesting the court issue an order directing the
Secured Creditor to appear and show cause why it should not be
held in contempt for failure to abide by the terms of the Second
Plan.

### 3.   The OSC Motion

On March 6, 2013, Debtor filed the OSC Motion alleging that
some Secured Creditors did not comply.  The OSC Motion alleged
that certain Secured Creditors refused to abide by the terms of
the Second Plan; i.e., many had returned Debtor's payments,
which were in amounts consistent with the Second Plan, insisting
that larger amounts be paid or that the arrearages be paid
before payments would be accepted, and others refused to accept
payoffs of the restructured debt, insisting that the original
amounts of the indebtedness be paid before a sale could occur.
These general allegations were asserted against the
"institutional lenders," without specifying any particular
creditor or particular wrongdoing.

-9-

1    Debtor also represented that it had served copies of the
2  Order to Comply upon its Secured Creditors, seeking compliance
3  with the Second Plan.  In the end, Debtor requested the
4  bankruptcy court to issue an Order to Show Cause to the Secured
5  Creditors identified in Exhibit "A" attached to the motion,
6  directing that they appear and show cause why they should not be
7  held in contempt due to their failure to comply with the terms
8  of the Second Plan, and if appropriate, award damages to Debtor.
9  Exhibit "A" showed approximately fifty-seven loans and listed
10 the creditor's name, the property, and the loan number.

11   On March 12, 2013, the bankruptcy court issued an Order to
12 Show Cause Regarding Creditors' Failure to Comply with Debtor's
13 Plan (OSC Order), requiring the named Secured Creditors to
14 appear and show cause why they should not be held in contempt
15 for failing to comply with the terms of the Second Plan.
16 Attached to the OSC Order as Exhibit "A" was a list of loans and
17 the corresponding creditors alleged to have failed to comply
18 with the Second Plan.

19   Numerous Secured Creditors responded to the OSC Motion,
20 complaining that the treatment of Class 4 claims in the First
21 Plan and the Second Plan was indeterminate and vague —
22 individual loans and properties were not identified, nor were
23 the terms relating to the fair market value of the properties,
24 payment amounts or payment terms (including taxes and
25 insurance).  Without this information, the Secured Creditors
26 argued, plan compliance was nearly impossible.

27   The bankruptcy court held a hearing on the OSC Order on
28 April 11, 2013.  Secured Creditors who appeared complained that

-10-

they needed to know exactly what the allegations of contempt
were so that they could conduct investigations and prevent
reoccurrence of any alleged violations of the terms of the
Second Plan.  The bankruptcy court ordered Debtor's counsel to
work towards stipulations with those creditors in an Interim
Order Re: Order to Show Cause Regarding Creditors' Failure to
comply with Debtor's Plan (Interim Order) entered July 1, 2013.

For Secured Creditors who did not appear at the hearing,
the bankruptcy court directed Debtor to lodge an order that
specified, by property and by lender, those lenders that failed
to appear, and finding that they were in contempt.  The court
ordered Debtor also to provide a calculation of damages by
property and lender and to provide notice of the same to the
lender.  If the Secured Creditor did not respond, the bankruptcy
court would award judgment in favor of Debtor for the amount of
the damages submitted.

There is nothing in the record showing that Debtor's
counsel complied with the directives in the Interim Order with
respect to the non-appearing Secured Creditors.  Moreover, since
Debtor had not complied with the Interim Order with respect to
several Secured Creditors who had appeared at the hearing, those
creditors filed a motion to compel Debtor to comply with the
court's order.  On March 6, 2014, the bankruptcy court held a
hearing on the motion to compel.  At the hearing, the
complaining Secured Creditors were permitted to upload orders
clarifying their respective treatment under the Second Plan.
Debtor's counsel did not object to those stipulations.

-11-

**4.     The Second Motion For Entry Of Order Directing Secured Lenders To Comply With Debtor's Confirmed Plan**

On June 5, 2014, Debtor filed a second motion for entry of an order directing Secured Creditors to comply with Debtor's confirmed plan (Second OSC Motion).  Similar to the first OSC Motion, the Second OSC Motion did not contain any specific allegations of wrongdoing in connection with a specific Secured Creditor.  In the Second OSC Motion, Debtor moved for an order directing the non-complying Secured Creditors to provide the following information to Debtor:  (1) the name, address, and contact person (or counsel) for the current owner or servicer of the loan;[5] (2) confirmation of the current principal balance of the loan as set forth in the plan, the stipulation of the parties, or the order of the court determining value; (3) the amount of interest accruals on the unpaid principal balance since the confirmation of the plan; and (4) if taxes and insurance have been impounded and not paid, pay all such taxes and insurance, and any interest or penalties thereon, without charging to Debtor such penalties and interest and account to Debtor for the same.  Debtor alleged that it had diligently requested this information from the Secured Creditors, but was unable to obtain it.  Finally, Debtor reserved its right to sanction or amend the damages against the Secured Creditors identified in its original OSC Motion.

---

[5] Debtor alleged that many loans had been transferred to new lenders or servicers since confirmation of the Second Plan without providing transferees the information they needed to comply with the terms of the Second Plan.

-12-

Numerous lenders joined in an omnibus response to the Second OSC Motion, contending that they had lodged orders resolving the Order to Show Cause and clarifying their treatment under the Second Plan.  These creditors maintained that they should not be included in Debtor's Second OSC Motion.

On July 10, 2014, the bankruptcy court held a hearing on the Second OSC Motion.  The  bankruptcy court vacated the motion as to those creditors who could produce stipulations.  As to the Secured Creditors who did not respond, the bankruptcy court directed Debtor to update the list of creditors pertaining to the Second OSC Motion, lodge an order for each creditor, and serve it pursuant to the adversary rules.  The orders were to include language in bold that failure to comply within thirty (30) days may result in the imposition of sanctions, including but not limited to, an award of attorney's fees to Debtor.  The record reflects that Debtor did not comply with the bankruptcy court's instruction to update the list of creditors or lodge orders for each creditor, nor were any such orders ever entered by the bankruptcy court.

### 5.    Debtor's Motion To Modify The Second Plan

On June 10, 2015, Debtor filed a Motion to Modify the Second Plan (Motion to Modify).  Debtor alleged that numerous Secured Creditors failed to comply with the terms of the confirmed Second Plan and continued to report various loans, which were otherwise current, in a default status.  As a result, Debtor argued that it was unable to qualify for refinancing of these loans within the time frame contemplated by First Plan.  On this basis, Debtor sought to modify the confirmed Second Plan

-13-

to extend the deadline for maturity of the secured loans under
its First Plan and Second Plan for a period of five years, until
November 23, 2020.[6]

### 6.    The October 14, 2015 Hearing

On October 14, 2015, the bankruptcy court held a hearing on
Debtor's Motion to Modify and a continued hearing on the OSC
Motion.  Debtor's counsel again asserted in general terms that
certain Secured Creditors were not complying with the terms of
the Second Plan.

The bankruptcy court ordered Debtor to (1) re-file and/or
supplement the OSC Motion with an updated list of the alleged
non-compliant Secured Creditors and to serve it on those
creditors and (2) clearly specify the nature and extent of each
creditor's alleged failure to comply with the Second Plan.  The
court conditionally granted the Motion to Modify through
December 31, 2015, to give Debtor an opportunity to prepare and
serve the supplement and to obtain a hearing prior to the
expiration of the extension.

### 7.    The OSC Supplement

On December 30, 2015, Debtor filed the supplement to the
OSC Motion (OSC Supplement).  Attached to the OSC Supplement was
a spreadsheet showing (1) the list of properties owned by
Debtor; (2) the Secured Creditors holding liens against the
properties; (3) the amounts of the loan for each property;
(4) the payment amounts; and (5) the reasons Debtor thought the

---

[6] Months later, Debtor's bankruptcy case was reassigned to
Judge Brenda Whinery.

-14-

Secured Creditor was not in compliance with the terms of the Second Plan. These reasons included, among others:

(1) "Lender not following [bankruptcy] of 4/11. Loan amount incorrect and 9/2015 [statement] showing unpaid payments back to 8/2009 (pre-confirmation). Lender stopped paying insurance in 2010, so [Debtor] pays, Lender pays taxes."

(2) "Lender loan [amount] incorrect. Attorney filed clarification with court 5/28/14, but lender's statement dated 9/2015 loan amount still incorrect. [Debtor] paid some insurance but lender now paying insurance and taxes."

(3) "Lender not sending [statements] since loan is in 3rd party name. Don't know if lender following [bankruptcy] interest rate or loan amount. Lender has NOT paid taxes. [Debtor] pays insurance."

The spreadsheet, which included over ninety properties, was not verified, authenticated or signed by Debtor's representative, nor was there a declaration submitted with the spreadsheet stating who had prepared the list or what information was relied upon in preparing it.

On the same date, Debtor requested a hearing on the OSC Supplement, but did not file a motion to expedite. Also on the same date, Debtor filed a Motion to Extend the Term of the Debtor's Plan of Reorganization (Motion to Extend) and lodged a form of order with the Motion to Extend. Debtor did not request a hearing on the Motion to Extend, nor any expedited consideration. The bankruptcy court did not enter the lodged order.

-15-

1
            **8.    The March 2, 2016 Hearing**

2
      Numerous objections and responses were filed by various

3
Secured Creditors to the Motion for OSC, OSC Supplement and

4
Motion to Modify.[7]  Some Secured Creditors sought clarification

5
of the confirmed Second Plan because it was so convoluted that

6
clarifications were necessary to update their systems.  They

7
also complained that Debtor had failed to include any evidence

8
to show what terms of the Second Plan were violated or to

9
establish any wrongdoing on the part of the individual creditor

10
with respect to the property identified.  Finally, other

11
creditors complained that certain properties should not have

12
been included since the creditor had obtained a clarification

13
order.

14
      Secured Creditors also objected to any modification to the

15

16
_____

17
      [7] Objections and/or responses to the Motion for OSC and/or
OSC Supplement were filed by Bank of America, N.A., Homeward

18
Residential, Inc., Ocwen Loan Servicing, LLC, Christiana Trust,
U.S. Bank National Association, Citigroup Mortgage Loan Trust

19
Inc., PNC Mortgage, Caliber Home Loans, Inc., as servicer for
LSF9 Master Participation Trust, Rushmore Loan Management

20
Services, LLC, CitiMortgage, Inc., J.P. Morgan Mortgage
Acquisition Corp., Flagstar Bank, FSB, JPMorgan Chase Bank, N.A.,

21
Nationstar Mortgage, LLC, Deutsche Bank National Trust Company,
Ditech Financial LLC fka Green Tree Servicing LLC, America's

22
Servicing Company dba Wells Fargo Bank, N.A. and Wells Fargo

23
Bank, N.A., Bank of America, N.A., and Seterus, Inc.
      Objections and/or responses to the Motion to Modify were

24
filed by PNC Mortgage, Flagstar Bank, FSB, Residential Credit
Solutions, as servicer for J.P. Morgan Acquisition Corp., Ocwen

25
Loan Servicing, LLC and Green Tree Servicing, LLC (collectively),
Rushmore Loan Management Services, LLC, Wells Fargo Bank, N.A.

26
and Ocwen Loan Servicing, LLC (collectively), CitiMortgage, Inc.,

27
JPMorgan Chase Bank, N.A., Deutsche Bank National Trust Company,
Ditech Financial LLC fka Green Tree Servicing, LLC, and Seterus,

28
Inc.

-16-

Second Plan to extend the term of the plan because they would automatically be out of compliance with the plan and would have to adjust their systems accordingly.

On March 2, 2016, the bankruptcy court held a hearing to consider the OSC Supplement and the Motion to Modify, as well as the numerous objections and responses. Debtor's counsel argued that certain Secured Creditors misapplied plan payments, which prompted the filing of the OSC Motion. He further asserted that the misapplied payments initiated erroneous reports of default and eventual foreclosure proceedings which damaged Debtor. Counsel requested the bankruptcy court to enter an order directing the non-complying Secured Creditors to enter into stipulations with Debtor or otherwise enter an order finding that they were not in compliance with the confirmed plan. These stipulations would confirm principal balances pursuant to the confirmed plan or stipulated between the parties, confirm the fixed interest rate during the plan, provide a payment history with information regarding payment application, provide an escrow accounting, correct any erroneous reports of default with the credit agencies, and provide timely and correct payoff statements. If taxes and insurance were not timely paid, Debtor requested that the lenders be required to pay any fees and costs for the late payments incurred.

Several Secured Creditors appeared at the hearing, stating that they had either complied with the plan or were unsure if they complied without a clarification order. As to plan modification, one lender's counsel argued that there should be no extension of the loan maturity dates with respect to all

-17-

1    creditors since the balloon payments with his client were past

2    due and thus Debtor was in default.  Debtor's counsel responded

3    that Debtor could not pay balloon payments at this time and thus

4    was requesting an extension of the maturity date as to all

5    creditors.  Debtor's counsel further represented that he was

6    prepared to present evidence regarding the effect of the

7    erroneous defaults and how that negatively impacted Debtor,

8    including Debtor's credit rating, which impaired its ability to

9    refinance.  After considering the arguments of counsel, the

10   bankruptcy court took the matters under advisement.

11       **9.    The Bankruptcy Court's Ruling**

12       On February 3, 2017, the bankruptcy court issued its ruling

13   and order.  The court denied the OSC Motion, as supplemented,

14   finding that Debtor failed to provide sufficient evidence or

15   detail to establish a prima facie case for contempt showing that

16   the lenders failed to comply with confirmed Second Plan.  The

17   bankruptcy court further found that even if Debtor had met its

18   prima facie case for contempt, Debtor failed to provide or

19   establish any basis for damages.[8]  Debtor filed a timely appeal

20   from the bankruptcy court's order.

21   **C.    Post-Appeal Events**

22       **1.    The State Court Lawsuit**

23       On April 13, 2017, Debtor filed a complaint in the Arizona

24   Pima County Superior Court (Case No. C20171805) against

25   _____

26       [8] The bankruptcy court also denied Debtor's Motion to Modify
     on the grounds that the Second Plan was substantially
27   consummated.  Therefore, Debtor could not meet the requirements
     under § 1127(b) for modification.  As noted, this ruling is not
28   at issue in this appeal.

-18-

1   approximately twenty Secured Creditors seeking damages for
2   breach of contract.  Debtor alleged that these Secured Creditors
3   failed to comply with the confirmed plan.  As a result, it was
4   damaged in an amount to be determined at trial.

5       On August 11, 2017, the matter was removed to the
6   bankruptcy court.  Thereafter, the removing parties, Wells Fargo
7   Bank, N.A. and Bank of America, sought to have the complaint
8   dismissed or, alternatively, for a more definite statement.
9   Debtor filed a motion to remand, contending that Wells Fargo and
10  BOA were two of twenty lenders involved in the breach of
11  contract action in the state court.  Debtor also maintained that
12  the bankruptcy court was without jurisdiction since the Second
13  Plan had matured and this appeal was pending.

14      At the hearing on the motion to dismiss and motion to
15  remand, Debtor's counsel confirmed that the Second Plan matured
16  on its terms and that this appeal was pending.  He further
17  stated that the administrative case was open only because he was
18  not sure how a final decree would affect this appeal.  Finally,
19  counsel contended that the bankruptcy court did not have
20  jurisdiction to consider the motion to dismiss because this
21  appeal was pending.

22      The bankruptcy court later granted the motion to remand.
23  Due to its ruling, the court found it unnecessary to consider
24  the motion to dismiss.  The court entered the order granting the
25  motion to remand on December 15, 2017, and the adversary
26  proceeding was closed.

27

28

-19-

1        **2.    The JP Morgan Parties' Request To Be Dismissed From**
2             **This Appeal**

3        Appellees JPMorgan Chase Bank N.A. and J.P. Morgan Mortgage

4   Acquisition Corporation filed a motion requesting that they be

5   dismissed from this appeal based upon certain clarification

6   orders which purportedly showed they were in compliance with the

7   plan.  A motions Panel denied their motion without prejudice to

8   allow the parties an opportunity to argue the issues raised

9   before the merits Panel.  Because we affirm on the merits, we do

10  not re-visit the denial of the motion.

11                      **II.    JURISDICTION**

12       The bankruptcy court had jurisdiction over this proceeding

13  under 28 U.S.C. §§ 1334 and 157(b)(2)(O).

14       Appellee Flagstar Bank FSB (Flagstar) contends that this

15  appeal should be dismissed since the order on appeal is

16  interlocutory, no leave was requested, and thus the Panel lacks

17  jurisdiction.  Therefore, we consider our jurisdiction over this

18  appeal.

19       To constitute a final, appealable judgment, an order

20  responding to a contempt motion must completely dispose of the

21  contempt motion.  <u>See</u> <u>Sportmart, Inc. v. Wolverine World Wide,</u>

22  <u>Inc.</u>, 601 F.2d 313, 315-16 (7th Cir. 1979); <u>Sanders v. Monsanto</u>,

23  574 F.2d 198, 199 (5th Cir. 1978) (denial of contempt motion

24  based on consent decree "final and reviewable because no further

25  district court action is required to give life to the denial").

26       Here, the bankruptcy court's ruling denying Debtor's OSC

27  Motion came at the end of Debtor's bankruptcy case and in the

28  order denying Debtor's Motion to Modify, the court found that

                              -20-

the Second Plan was substantially consummated and fully matured

(the maturity date was November 23, 2015). There is thus

nothing left for the bankruptcy court to do except close the

case. Accordingly, we conclude that the order on appeal

completely disposes of the OSC Motion, as supplemented, and is a

final order. We have jurisdiction under 28 U.S.C. § 158.

## III.   ISSUE

Whether the bankruptcy court abused its discretion by

denying Debtor's OSC Motion, as supplemented, which sought to

hold Secured Creditors in contempt for failing to comply with

the terms of its confirmed Second Plan.

## IV.   STANDARDS OF REVIEW

An order denying a motion for civil contempt is reviewed

for an abuse of discretion. Knupfer v. Lindblade (In re Dyer),

322 F.3d 1178, 1191 (9th Cir. 2003).

We also review a court's decision whether to hold an

evidentiary hearing for an abuse of discretion. See Murphy v.

Schneider Nat'l, Inc., 362 F.3d 1133, 1139 (9th Cir. 2004).

A bankruptcy court abuses its discretion if it applies the

wrong legal standard, misapplies the correct legal standard, or

if its factual findings are illogical, implausible or without

support in inferences that may be drawn from the facts in the

record. See TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d

820, 832 (9th Cir. 2011) (citing United States v. Hinkson,

585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

We may affirm on any ground supported by the record,

regardless of whether the bankruptcy court relied upon, rejected

or even considered that ground. Fresno Motors, LLC v. Mercedes

-21-

1  <u>Benz USA, LLC</u>, 771 F.3d 1119, 1125 (9th Cir. 2014).

2  ### V.  DISCUSSION

3  ### A.  Standards For Contempt Under § 105

4  The OSC Motion and OSC Supplement asked the bankruptcy

5  court to issue an order holding various Secured Creditors in

6  contempt for their failure to comply with the terms of the

7  Second Plan, as confirmed.  "Once confirmed, a Chapter 11 plan

8  acts as both a contract which binds the parties and as an order

9  of the bankruptcy court."  <u>JCB, Inc. v. Union Planters Bank, NA</u>,

10  539 F.3d 862, 870 (8th Cir. 2008).  The bankruptcy court has the

11  authority to hold a party in contempt for violating a court

12  order such as the Second Confirmation Order, and impose civil

13  contempt sanctions under § 105(a).  <u>In re Dyer</u>, 322 F.3d at

14  1189-90; <u>Renwick v. Bennett (In re Bennett)</u>, 298 F.3d 1059, 1069

15  (9th Cir. 2002).

16  The standards for an order of contempt are high.  To find a

17  party in civil contempt, the moving party bears the burden of

18  proving that the offending party knowingly violated a definite

19  and specific court order by clear and convincing evidence.

20  <u>In re Dyer</u>, 322 F.3d at 1190-91.  To be definite and specific,

21  the order at issue must unambiguously command the offending

22  party to perform or refrain from performing in accordance with

23  the order, and leave "no uncertainty in the minds of those to

24  whom it is addressed."  <u>In re 1990's Caterers Ltd. d/b/a Vina de</u>

25  <u>Villa Caterers</u>, 531 B.R. 309, 319 n.13 (Bankr. E.D.N.Y. 2015);

26  <u>see also</u> <u>Int'l Longshoremen's Ass'n, Local 1291 v. Phila. Marine</u>

27  <u>Trade Ass'n</u>, 389 U.S. 64, 76 (1967) ("The judicial contempt

28  power is a potent weapon.  When it is founded upon a decree too

-22-

1    vague to be understood, it can be a deadly one.").

2        In addition, under the clear and convincing standard, the

3    evidence must create a conviction that the factual contention is

4    "highly probable." Colorado v. New Mexico, 467 U.S. 310, 316

5    (1984); United States v. Jordan, 256 F.3d 922, 930 (9th Cir.

6    2001) ("[C]lear and convincing evidence 'indicat[es] that the

7    thing to be proved is highly probable or reasonably certain.

8    This is a greater burden than preponderance of the

9    evidence, . . . but less than evidence beyond a reasonable

10   doubt.'".).

11       Once the moving party has made this prima facie showing,

12   the burden of production then shifts to the contemnor to

13   demonstrate why it was unable to comply with the court's order.

14   FTC v. Affordable Media, 179 F.3d 1228, 1239 (9th Cir. 1999);

15   see also Battaglia v. United States, 653 F.2d 419, 422 (9th Cir.

16   1981). However, "shifting the burden from the movant to the

17   alleged contemnor without proving the underlying noncompliance

18   is impermissible." Nisselson v. Empyrean Inv. Fund, L.P. (In re

19   Marketxt Holdings Corp.), 336 B.R. 39, 52 (Bankr. S.D.N.Y. 2006)

20   (citing Levin v. Tiber Holding Corp., 277 F.3d 243, 251 (2d Cir.

21   2002)).

22       If the alleged contemnor satisfies its burden of

23   demonstrating why it was unable to comply, the movant must carry

24   its burden of proof to refute this inability. Battaglia,

25   653 F.2d at 423. Accordingly, while the burden of production

26   may shift, the burden of persuasion or burden of proof with

27   clear and convincing evidence is always on the moving party

28   seeking a finding of civil contempt. Id. A bankruptcy court

-23-

1   has wide latitude in determining whether there has been

2   contemptuous defiance of its order.  Gifford v. Heckler,

3   741 F.2d 263, 266 (9th Cir. 1984).

4       Civil penalties for contempt must either be compensatory or

5   designed to coerce compliance.  F.J. Hanshow Enters., Inc. v.

6   Emerald River Dev., Inc., 224 F.3d 1128, 1137-38 (9th Cir.

7   2001).  Damages for civil contempt awards must be proven by a

8   preponderance of the evidence.  Ahearn ex rel. N.L.R.B. v. Int'l

9   Longshore & Warehouse Union, Locals 21 & 4, 721 F.3d 1122, 1130

10  (9th Cir. 2013).  The factfinder may make a "just and reasonable

11  estimate" of damages based on inferential and direct proof.

12  Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100,

13  124 (1969) ("It would be an inducement to make wrongdoing so

14  effective and complete in every case as to preclude any

15  recovery, by rendering the measure of damages uncertain.").

16  **B.   Analysis**

17      Debtor argues on appeal that the bankruptcy court erred by

18  denying its OSC Motion, as supplemented, because it met its

19  burden of proof with clear and convincing evidence of contempt.

20  According to Debtor, the spreadsheet attached to the OSC

21  Supplement (1) identified each property; (2) identified each

22  lender for that property; (3) identified the correct figures

23  that applied to each loan, including principal balances as

24  established under the plan and payment amounts; and (4) detailed

25  each and every instance where the lender failed to comply with

26  the plan with respect to its loan.  Debtor also asserts that if

27  additional evidence was required to make a "prima facie" case,

28  it was never given an opportunity to provide that evidence

-24-

because the court did not conduct an evidentiary hearing.
Debtor maintains that by denying its motion for contempt, the
court, in essence, held that the Secured Creditors were in
compliance with the plan.  We are not convinced.

Throughout the OSC proceedings, the bankruptcy court
applied the correct legal standard to Debtor's contempt claims,
placing the burden of proof on Debtor to show by clear and
convincing evidence that certain Secured Creditors had violated
the terms of the Second Plan.  Although Debtor had numerous
opportunities to provide such evidence, Debtor provided no
declaration, affidavit, or other admissible evidence showing
that any individual Secured Creditor failed to comply with the
terms of the Second Plan.  Further, Debtor never sought
discovery nor did it seek modification of the bankruptcy court's
orders during the five years the OSC Motion was pending.

Instead, Debtor failed to comply with the bankruptcy
court's orders and instructions over a protracted period of
time.  In April 2013, Debtor ignored the bankruptcy court's
order to provide a calculation of damages by property and
creditor and to provide notice of the same to the non-complying
Secured Creditors.  In July 2014, Debtor failed again to follow
the bankruptcy court's instruction to update the list of non-
complying Secured Creditors subject to the OSC Motion, lodge an
order for each creditor, and serve it pursuant to the adversary
rules.

At the October 14, 2015 hearing, the bankruptcy court
ordered Debtor to re-file or supplement the OSC Motion with an
updated list of the alleged non-compliant creditors and to serve

-25-

1    it on those creditors.  The bankruptcy court also ordered Debtor

2    to specify the nature and extent of each creditor's failure to

3    comply with the plan as to each property.  Although Debtor

4    supplemented its OSC Motion, its attempted compliance with the

5    bankruptcy court's instructions was wholly inadequate.

6        The spreadsheet attached to the OSC Supplement, which

7    purportedly provided the reasons why certain Secured Lenders

8    were not in compliance with the plan, is neither verified nor

9    authenticated, and no foundation was laid for the basis of

10   Debtor's allegations.  There are no details about the underlying

11   records relied upon for the allegations of contempt nor are any

12   supporting documents attached.  There was no mention of what

13   plan provision was violated.

14       Debtor alleged that a certain lender's loan amount was

15   incorrect, but there is no evidence to support this allegation.

16   In another instance, Debtor stated that the lender had NOT paid

17   taxes (emphasis in original).  However, there is no declaration

18   or document showing that the lender was obligated to pay them.

19   In short, the spreadsheet is not competent evidence of anything.

20   It clearly is not clear and convincing evidence.

21       Therefore, Debtor failed to meet its initial burden of

22   proof by showing a "high probability" that the Secured Creditors

23   knowingly violated a clear and specific order.[9]  Further, as the

24   bankruptcy court found, even if Debtor had met its burden under

25   the clear and convincing standard for contempt, Debtor did not

26

27       [9] It also appears that the Second Plan was too vague to be
     understood.  Eventually, the bankruptcy court entered forty-five
28   clarification orders in connection with the OSC Motion.

provide any evidence of damages.  Accordingly, the bankruptcy court did not abuse its discretion by denying Debtor's OSC Motion, as supplemented.

Finally, Debtor contends the bankruptcy court erred by not holding an evidentiary hearing.  Bankruptcy courts generally enjoy broad discretion to determine whether to hold an evidentiary hearing at which live testimony can be presented. See Civil Rule 43(c) (made applicable in bankruptcy cases by Rule 9017).  The record shows that Debtor never requested an evidentiary hearing nor submitted evidence in the contempt proceedings which created a factual dispute for the court to resolve.  The bankruptcy court also gave Debtor numerous opportunities to present clear and convincing evidence of contempt, which it did not do; nor was there any evidence of damages.  The bankruptcy court did not abuse its discretion by failing to hold an evidentiary hearing.

## VI.    CONCLUSION

For the reasons stated, we AFFIRM.

-27-